UNITED STATES, Appellee

v.

MONROE D. CRUSOE, Private E–1, U. S. Army, Appellant

3 USCMA 793, 14 CMR 211

No. 2780

Decided February 26, 1954

LT COL Edgar R. Minnich, U. S. Army, 1ST LT Wade J. Dahood, U. S. Army, and 1ST LT Richard C. Shadyac, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Donald M. Sukloff, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Together with three companions whose appeals are not before us, the accused was found guilty by an Army general court-martial under a single specification alleging attempted larceny, and two specifications of conspiracy— in violation of the Uniform Code of Military Justice, Articles 80, 81, 50 USC §§ 674, 675, respectively. The accused was sentenced to receive a dishonorable discharge, to forfeit all pay and allowances, and to be confined at hard labor for five years—the most severe of the three sentences imposed. The conven-ing authority approved the findings and this sentence, and a board of review in the office of The Judge Advocate General has affirmed. This Court granted the accused's petition for review to consider the matters dealt with hereafter.

II

One of the specifications under Article 81 alleged that the accused conspired with four other named individuals *to steal* certain items from Post Exchange Number 5, Fort Campbell, Kentucky. The remaining specification under this Article alleged a conspiracy with the same persons, effected at the same time,

**795**

*unlawfully to enter* Post Exchange Number 5 with intent to commit larceny—and assigned the same overt act performed in pursuance of this conspiracy as had been assigned under the first of the two specifications. As we view the problem, only a single agreement—that is, partnership in crime—was involved, although violations of two different Articles of the Uniform Code were encompassed by the illicit compact. Cf. United States v. Amato, 1 CMR 578; United States v. Mizell, 3 CMR 843; United States v. Joyner, 4 CMR 755; Cases collected at 87 L ed 31–34. We find no fault with the accuser's use of two specifications to allege the single conspiracy, for the difficulties in determining in advance of trial exactly what agreement in crime the testimony will reveal introduce "sufficient doubt as to the facts or the law . . . to warrant making one transaction the basis for charging two or more offenses." Manual for Courts-Martial, United States, 1951, paragraph 26*b*; 27 Am Jur, Indictments and Informations, §§ 133, 134; 42 CJS, Indictments and Informations, § 179. Accordingly, we see no error in the law officer's refusal to dismiss one of the two specifications of conspiracy on the ground of multiplicity. Similarly, it was permissible for the court-martial to return findings of guilty under each conspiracy specification "without regard to whether the offenses are separate." See United States v. Yarborough, 1 USCMA 678, 5 CMR 106; Manual, supra, paragraph 74*b*(4).

Having concluded that the court-martial might properly render findings of guilty under each conspiracy specification, we recognize no basis for a holding that the convening authority must disapprove the finding of guilty as to one of the two. United States v. Keith, 1 USCMA 442, 4 CMR 34, heavily relied on by defense counsel, may be distinguished easily. There we were concerned with issues arising when one of several specifications, on which findings of guilty were returned, was un-

supported either by sufficient evidence or by proper instructions. Here each and every finding of guilt was supported both by evidence and adequate instructions. As to the danger—mentioned in Keith—that failure to disapprove an invalid finding of guilty may operate adversely to affect clemency and parole action on behalf of an accused, we feel that in this sort of case we must trust in the agencies involved in subsequent clemency procedures to recognize that only a single partnership in crime was involved—albeit one characterized by several different objects. In any event, we find no sort of authority in the Code, nor in its companion the Manual, for disapproving the finding of guilty as to either of the two specifications of conspiracy with which we are concerned here. United States v. McCormick, 3 USCMA 361, 12 CMR 117.

On the other hand, the court-martial was not at liberty to sentence the accused as if he had been found guilty of two distinct conspiracies. Braverman v. United States, 317 US 49; Sprague v. Aderholt, 45 F2d 790 (CA 5th Cir); Manual, supra, paragraph 76*a*(8). In the instant case it is true that the law officer did not advise the court-martial concerning the maximum sentence at the time it was closed to deliberate on sentence. However, somewhat earlier in the trial, and in connection with rulings on defense motions to dismiss for multiplicity, he had informed the court explicitly that the maximum punishment for all alleged offenses aggregated fifteen years of confinement, plus dishonorable discharge and total forfeitures—one-third of the confinement total being attributable to *each* specification of conspiracy. The court can scarcely be presumed to have overlooked that pronouncement. Thus, we feel compelled to invoke the principle that, if a law officer erroneously advises court members concerning the maximum sentence imposable, then reviewing authorities must scrutinize the record carefully to determine the legality of the sentence imposed in fact. United States v. Cooper, 2 USCMA 333, 8 CMR 133. It is of no import that the sen-

796

tence assessed was within the maximum allowable for the offenses of which the accused was properly convicted. United States v. Keith, supra. The question before us, therefore, comes down to whether the prejudice flowing from the law officer's error was purged by any reviewing authority—with requisite power—through a determination of the appropriateness of the sentence in the light of that error.

### III

In the case at bar we entertain no doubt that all prejudice was removed in the course of review of ▮ the record of trial. The staff judge advocate in the portion of his review dealing with sentence indicated to the convening authority that the maximum sentence based on correct findings included only ten years' confinement. At pages four and five of his review, he pointed out that, because of the relationship between the two specifications alleging conspiracy, only a single offense had been charged, and that five years' confinement at hard labor would constitute the maximum confinement to which the accused might lawfully be sentenced under both specifications alleging this crime. However, the staff judge advocate further asserted that: "Inasmuch as the sentences returned by the court did not exceed the maximum authorized punishment for all charges as indicated above, it is felt that the error did not materially prejudice the substantial rights of the accused." This quoted language from the field review would seem to suggest that the staff judge advocate was proceeding on the erroneous premise that the sentence as to confinement announced by the court was sustainable as such, if within the permissible maximum, and without regard to further determination of appropriateness. Subsequently, however, and in the section of the review devoted to clemency, this legal officer detailed the civilian background, military record, and previous convictions of the accused. In this connection, he presented information acquired during the course of a personal interview with the accused, from his confinement record, and from a neuropsychiatric report concerning his mental condition. Thereafter the staff judge advocate stated in a subparagraph that "The sentence is correct in law and fact *and is appropriate* for the offenses of which accused Private Crusoe was found guilty. There are no mitigating or extenuating factors in the record which would warrent [sic] clemency consideration at this time." (Emphasis supplied.) It might be possible to contend that the staff judge advocate had hopelessly confused the matter of appropriateness of sentence with that of clemency, and that he was not consciously determining the former with a proper understanding of the maximum sentence to which the accused had been subjected by the findings of the court-martial. Such a contention, however, elevates form over substance. Nor are there many who are fit to cast the first stone at one who admixes in his mental processes the concept of legal appropriateness with that of clemency. Reading the staff judge advocate's review as a whole, we are sure that he did, in fact, effect a determination of the question of appropriateness of sentence—with the result that the error of the law officer was purged.

Of course, the record of trial considered by the board of review contained the extensive review ▮ of the convening authority's staff judge advocate. Despite the board's failure to render a long-form opinion, we are sure that its members were cognizant of the content of this field review. Therefore, we must conclude that they too passed on the question of appropriateness of sentence—and with no sort of misconception that the accused had been convicted of offenses whose maximum punishment aggregated fifteen rather than only ten years. Thus all doubt is removed that the question of sentence adequacy was passed on by agencies with power—wholly wanting in this Court—to determine appropriateness in this area.

### IV

In our examination of the record, we have noted that one of the two "previ-

ous convictions" of the accused considered by the court-martial in assessing sentence had to do with an offense occurring on or about April 24, 1952. The crimes for which the accused was then being tried were alleged to have taken place in January 1952. Accordingly the court-martial was not free to consider the April conviction, since it did not concern an offense committed "during the three years next *preceding the commission of any offense*" of which accused was convicted at the trial.

Manual, *supra*, paragraph 75*b*(2). (Emphasis supplied.) United States v. Camp, 8 CMR 592; United States v. Tackett, 9 CMR 480; United States v. Phillips, 10 CMR 436. This error was not urged by counsel at either the trial or appellate levels. By reason of it, however, we deem it appropriate to remand the instant case to the board of review for consideration of reassessment of sentence. United States v. Zimmerman, 1 USCMA 160, 2 CMR 66.

Chief Judge QUINN and Judge LATIMER concur.