UNITED STATES, Appellant

v

RICHARD F. LANFORD, Commissaryman Seaman, U. S. Navy, Appellee

6 USCMA 371, 20 CMR 87

No. 6540

Decided September 16, 1955.

*Commander George H. Rood* argued the cause for Appellant, United States. With him on the brief was *Lieutenant (jg) Mitchell W. Rabbino.*

*Lieutenant Harold Hoag* argued the cause for Appellee, Accused. With him on the brief was *Captain Parker E. Cherry.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This case raises novel and important questions relating to appellate review of the sentence adjudged by a court-martial.

On December 1, 1954, the accused was arraigned before a special court-martial on a charge alleging an unauthorized absence of approximately eleven hours. He pleaded guilty and was convicted. During the sentence procedure, trial counsel read the service data from the charge sheet and introduced evidence of two previous convictions. Both convictions were by a summary court-martial. The first was for a two day absence without leave in 1952, and the second for a nineteen hour absence without leave in May 1954.

In mitigation, the accused made a brief sworn statement in which he explained that he was in a "little fight" the evening before his present absence. The civilian police locked him up for the night. On his release the next morning, he returned to his station as speedily as possible. Additionally, defense counsel asserted that the accused had been restricted for eight days be-fore the trial, and that he was serving his second enlistment.

The accused was sentenced to a bad-conduct discharge and to confinement at hard labor for one month. Two days later the convening authority approved the sentence. However, he also provided for suspension of the execution of the discharge and for automatic remission at the end of the period of confinement and five months thereafter. Included in his formal action is a statement that in "approving the sentence . . . the convening authority has also considered the entire service record of the accused." The statement is followed by a recital of certain entries from various sections of the accused's service record. These show that the accused served on the USS Iowa when it was commended for high morale and devotion to duty during bombardments of enemy coastal transportation and supply lines in Korea, and that the accused was eligible for the United Nations Service Medal and Korean Service Medal with one Bronze Star. Also set out is a list of nine nonjudicial punishments imposed upon the accused during the period from

**373**

February 1951 to July 1954, a period within the accused's current enlistment.

All the matter in the convening authority's action was apparently noted in compliance with a directive from the Chief of Naval Personnel. BUPERS Instruction 1626.13, October 7, 1954. The pertinent provisions of the directive are as follows:

"2. *Background.*

a. Aside from the responsibilities placed upon reviewing authorities as to the legality and uniformity of sentences, reviewing authorities are vested with the authority to exercise clemency. In order that all reviewing authorities may be able to fully assess the propriety of a sentence and the potential of an accused for future service, when a punitive discharge has been adjudged, it is considered mandatory that a synopsis of the conduct record of the accused be available.

.  .  .  .  .  .

"3. *Action.*

In order that the best interests of the service as well as that of the accused may be served, the convening authority, in those cases where the sentence adjudged extends to a punitive discharge, shall include in his initial action a brief synopsis of the accused's conduct record during the current enlistment or current enlistment as extended. This synopsis should contain in chronological order: Dates, nature of offenses committed, sentences adjudged and approved, and nonjudicial punishment imposed. The synopsis should also include medals and awards, commendations, and any other information of a commendable nature. Although not required, similar action may, if circumstances are deemed appropriate, be taken in other cases. The foregoing action is not intended to usurp the legal requirements as to the admissibility of record of previous conviction."

After the convening authority completed his action, the case was forwarded under Article 66(b), Uniform Code of Military Justice, 50 USC § 653, to the

**374**

officer exercising general court-martial jurisdiction. It appears that while the latter had the case, the accused submitted an affidavit for consideration with the record. In it the accused asserts that his trial testimony about a "little fight" was misleading since "no blows actually were struck." The accused again emphasized that he was released by the civilian authorities without trial or bond. The affidavit appears at the end of the trial exhibits. See Manual for Courts-Martial, United States, 1951, Appendix 10b, page 535. On December 19, 1954, the general court-martial authority approved the sentence and forwarded the case for review in accordance with the provisions of Article 66, supra.

In due course, the case was referred to a board of review in the office of The Judge Advocate General of the Navy. There, appellate defense counsel moved to strike from the record the references to nonjudicial punishment which were set out in the convening authority's action. The motion was denied. However, the board of review held that it could not, and would not, consider the additional information in its deliberation on the sentence. It concluded that, on the basis of the offense charged and the character of the two previous convictions admitted into evidence, a punitive discharge was inappropriate. Accordingly, the board of review affirmed only so much of the sentence as provided for confinement. One member of the board concurred in the result. In a separate opinion, he said that the board of review not only could, but should, consider the supplemental matter in the convening authority's action, which he described as being of "invaluable assistance." He also said that a board of review can reduce a sentence as an "act of grace," that is, as an act of clemency.

In the first certified question we are asked to review the action of the board of review denying the accused's motion to strike the statement of nonjudicial punishments from the convening authority's action. That question brings into focus the manner in which the con-

vening authority may exercise his power to review a sentence. Navy boards of review are in conflict on the question. See: United States v Harmon, 2–54–S–1010, December 15, 1954, and United States v Land, 3–54–S–1267, December 8, 1954.

The primary grant of authority to convening authorities and boards of review is contained in the Uniform Code. Article 60, 50 USC § 647, directs that every court-martial record of trial be forwarded to the convening authority for action. Article 64, 50 USC § 651, provides that "the convening authority shall approve . . . the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved." The Code provisions do not prescribe any form in which the convening authority must express his action. That matter is left entirely to administrative discretion.

Turning to the Manual for Courts-Martial, we find a number of formal requirements for the convening authority's action. Manual for Courts-Martial, United States, 1951, paragraph 89a, page 151. None of these limit the subject matter which the convening authority can or should set out. On the contrary, the Manual provisions encourage the inclusion by the convening authority of the reasons for his action. Thus, paragraph 89c provides that:

". . . If the convening authority disapproves the sentence and does not order a rehearing, he will dismiss the charges. If a rehearing is ordered or if any finding is declared invalid because of the failure of a specification to allege any offense, the disapproval or the declaration of invalidity, together with the reasons therefor, will be set forth in the action. See 92. *Similarly, if the reasons for the disapproval of a particular finding of guilty might aid in determining the effect of the proceedings upon future administrative disposition of the accused, the reasons for the disapproval should be set forth in the action.*

·　·　·　·　·　·

(3) *Approval of sentence.*—When any part of the sentence is to be approved, mention will be made in the action only of those findings or parts of findings which are to be disapproved. See 89c(2) for rule as to stating reasons for disapproving a finding of guilty. Approval of the sentence, standing alone, constitutes approval of all findings of guilty.

(4) Execution; suspension.—. . .

When the convening authority is not empowered to commute a sentence, but feels that any approved sentence involving a general or flag officer, or extending to death or dismissal, should be commuted, he may make a recommendation to that effect in his action."

These provisions refer to the disapproval of a sentence by the convening authority, but their value and their purposes are not limited to this. The considerations which induce the convening authority to affirm a sentence are undoubtedly of importance to the authorities who may later act upon the case. In any event, the Manual does not prohibit the convening authority from stating his reasons for approving a sentence. It provides that in cases of "approval, execution, or suspension" the convening authority "need not" set out his reasons. Ibid, paragraph 89c(4), pages 152–153. This language cannot be construed as a mandatory prohibition. We conclude, therefore, that no provision of the Uniform Code or of the Manual prohibits the convening authority from including in his formal action the reasons which persuade him to approve or disapprove the sentence adjudged by the court-martial.

Is there any overriding rule of justice which precludes the procedure prescribed by the Navy directive and followed by the convening authority in this case? We know of none, and the accused refers to none. In fact, he admits that the convening authority has the right to go to any source for information which will assist him in deciding on a just sentence for the accused. See United States v Coulter, 3 USCMA 657, 14 CMR 75, concurring opinion of Judge

**375**

Brosman and dissenting opinion of Judge Latimer. Thus, the convening authority is authorized to refer to all information relevant to the sentence which is contained in the accused's service record. Also, the accused concedes that the information relied upon by the convening authority can be forwarded with the record of trial. But he maintains that the information must be separated from the record before the case is referred to a board of review.

The accused's argument is based upon the contention that the supplemental matter relating to the sentence which is considered by the convening authority cannot properly be reviewed by the board of review. And if the allegedly improper matter should come before the board of review, it would necessarily prejudice the board against the accused. See: United States v Steber, 6–54–S–1273, February 15, 1955.

These contentions bring us to the other certified questions. In combination, they concern the authority of the board of review to consider the convening authority's synopsis of the information taken from the accused's service record. The questions are as follows:

"(1) Was the action of the Board of Review correct in denying the defense motion to strike from the convening authority's action all references to non-judicial punishments previously imposed upon the accused?

"(2) If (1) above is answered in the affirmative, should the Board of Review have considered *all* of the matter contained in the said synopsis in its determination of the appropriateness of the sentence?

. "(3) Is a Board of Review authorized to exercise clemency, and if so, to what extent?

"(4) If (3) above is answered in the affirmative, should the Board of Review consider all of the matter contained in the said synopsis in the determination of whether or not to exercise clemency?"

For purposes of military law a board of review is a judicial body, United States v Whitman, 3 USCMA 179, 11

**376**

CMR 179. It is however, the creation of Congress. It can, therefore, act only within the direct or reasonably implied scope of the powers given to it by the Uniform Code. United States v Reeves, 1 USCMA 388, 3 CMR 122; United States v Brasher, 2 USCMA 50, 6 CMR 50. The grant of authority to the board of review is found in Article 66, supra. Important here is that part of the Article which provides that the board of review shall:

"... affirm ... the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

Since the effective date of the Uniform Code, we have decided more than a score of cases which considered some aspect of the board of review's power over the sentence. In most instances, it was sufficient to note that the board of review has the power "to affirm so much of the sentence as it deems appropriate on the basis of the entire record." United States v Fleming, 3 USCMA 461, 465, 13 CMR 17. Generally, when we set aside a finding of guilty or affirm only a lesser included offense to that charged, we remand the case to The Judge Advocate General for reference to a board of review for determination of an "appropriate sentence." United States v Crawford, 4 USCMA 701, 16 CMR 275; United States v Keith, 1 USCMA 442, 4 CMR 34. Occasionally, the Court or an individual judge has referred to the determination of an "appropriate sentence" as one which might technically be different from a "clemency sentence." Thus, in his concurring opinion in United States v Coulter, supra, Judge Brosman said (page 662):

"It has also been suggested that the action of the acting assistant staff judge advocate here, and that of his superior, the staff judge advocate, were concerned wholly with clemency. But how can this be known? Why am I not able to assert with equal assurance that both of these officers firmly believed that they

were acting solely with respect to appropriateness of sentence? I do not do this, of course—and for the reason that I cannot be sure. And one who is certain in these premises must indeed possess a clearer idea than I of the practical distinction between a recommendation of clemency and one as to appropriateness of sentence. There is undeniably a clear theoretical distinction between the power to grant clemency and the power to determine appropriateness. However, in a situation in which both authorities reside in the same functionary, it is a little difficult for me to be sure of which is being exercised."

A short time later, writing for a unanimous court in United States v Crusoe, 3 USCMA 793, 797, 14 CMR 211, Judge Brosman said:

". . . It might be possible to contend that the staff judge advocate had hopelessly confused the matter of appropriateness of sentence with that of clemency, and that he was not consciously determining the former with a proper understanding of the maximum sentence to which the accused had been subjected by the findings of the court-martial. Such a contention however, elevates form over substance. Nor are there many who are fit to cast the first stone at one who admixes in his mental processes the concept of legal appropriateness with that of clemency."

In United States v Freeman, 4 USCMA 76, 15 CMR 76, Judge Latimer referred to the alternatives available to a board of review when it affirms a finding of guilty which would support the death sentence adjudged by the court-martial. He there said (page 81):

"At best the board had three possible alternatives. First, it could affirm the sentence as originally imposed; second, it could affirm the sentence and recommend that clemency action be exercised by those in whom such authority was vested; and third, it could direct a rehearing, if the sentence could not be justified reasonably upon the affirmed findings."

The second and third alternatives noted by Judge Latimer indicate a view that an "appropriate sentence" is different from a "clemency sentence." The same distinction is implied in the majority's opinion in United States v Goodwin, 5 USCMA 647, 18 CMR 271. It was there said (page 657):

". . . We thereupon concluded the law prevented boards of review from affirming an illegal sentence and when that situation arises the power to reduce the sentence to a legal one is an inherent power of the board. No question of policy or clemency was involved in that affirmance, as Congress had set the limit beyond which the sentence could not go."

See also United States v Parker, 6 USCMA 75, 87, 19 CMR 201. However, in United States v Cavallaro, 3 USCMA 653, 14 CMR 71, Judge Latimer writing for the Court, did not preclude a description of the power of the board of review as a clemency power. He there said (pages 655–656):

". . . While boards of review cannot change the nature of the punishment, except as might be involved in the Bigger case, that does not prevent them from treating an accused with less rigor than their authority permits.

• • • • •

". . . Accordingly, there is no reason why members of these boards should not make recommendations to appropriate authorities to exercise any powers of clemency or commutation not possessed by them. However, there is a duty on members of boards of review to act within their own sphere and they should not approve a sentence they consider excessive and then appeal to others to reduce. All persons who have any responsibility in fixing, affirming, or reviewing sentences should meet their responsibility by adjudging or affirming a fair and just sentence without regard to any further reductive action that might be taken by others who will subsequently act on the record."

In no case has the Court attempted to affix a label to the sentence powers of the board of review. We were satisfied to examine each case and to determine whether the board of review did or did not exceed its powers in the particular instance. Indeed, in many cases to have given a precise title to the board's exercise of its power would merely have "elevate[d] form over substance." United States v Crusoe, supra. See also, United States v Jones, 1 USCMA 302, 306, 3 CMR 36. However, the certified questions indicate the need for clarification.

Clemency is defined as the "Disposition to treat with less rigor than one's authority or power permits; mercy." Webster's New International Dictionary, 2d ed, page 501. The general power to exercise clemency belongs to the sovereign. Thus, it has been said that "Clemency is the ornament of princes." Shakespeare, in the "Merchant of Venice," wrote:

". . . mercy is above this sceptred sway, It is enthroned in the hearts of kings, It is an attribute to God himself; And earthly power doth then show likest God's, When mercy seasons justice." [Act IV, Scene 1, line 184.]

Insofar as offenses against the United States are concerned, the power to exercise clemency belongs to Congress, subject to the right of the President to "grant Reprieves and Pardons . . . except in Cases of Impeachment." United States Constitution, Article II, section 2; United States v Goodwin, 5 USCMA 647, 18 CMR 271. In the Uniform Code, Congress gave designated authorities certain discretionary powers in regard to sentences imposed by courts-martial. To the convening authority, Congress gave the power to "approve . . . the sentence or such part or amount . . . as he in his discretion determines should be approved." Article 64, Uniform Code of Military Justice, 50 USC § 651. To the board of review, Congress gave authority to "affirm . . . the sentence or such part or amount of the sentence, as it . . . determines, on the basis of the entire record, should be approved." Article 66, Uniform Code of Military Justice, 50 USC § 653.[1] In United States v Goodwin, supra, the Court described the difference between the language of the two grants as a "slight change in one phrase." Does this "slight change" effect a significant change in the nature of the power possessed by each authority? More specifically, in the context of the certified questions does it mean that the convening authority can be compassionate and merciful, but that the board of review cannot treat an accused with less rigor than its authority permits? We think that Congress intended no such difference.

One of the principal matters Congress considered at the time of the enactment of the Uniform Code was the establishment of a procedure for review of the sentence which would insure a fair and just punishment for every accused. To achieve that purpose, Congress gave the convening authority the power to approve a sentence in his discretion. But it made his decision subject to review by a board of review. United States v Brasher, 2 USCMA 50, 6 CMR 50; United States v Cavallaro, 3 USCMA 653, 14 CMR 71. The name by which the board's power is denominated is really unimportant. What is important is that, within the limitations of its own authority, the board of review can, in the interests of justice, substantially lessen the rigor of a legal sentence. The board of review, therefore, can be compassionate; it can be lenient; it can be forbearing. If one prefers to call the influence of those human qualities in the mitigation of a sentence the exercise of the judicial function of determining legal appropriateness, the description is proper. Tah Do Quah v State, 62 Okla Cr 139, 70 P2d 818. On the other hand, if one wishes

[1] Congressional grant of power over certain sentences to the President and Department Secretaries is not in issue, and hence need not be considered. See Articles 71, 74, Uniform Code of Military Justice, 50 USC §§ 658, 661.

to call it clemency, that description also is proper. The title applied to the power matters little, so long as it is clearly understood that the law invests boards of review with the power to treat "an accused with less rigor than their authority permits." United States v Cavallaro, supra, page 655.

In the criminal law, an appeal to human kindness is made not in vacuo. Rather, the plea is generally referenced to specific mitigating circumstances. See: Rule 32, Federal Rules of Criminal Procedure. Undoubtedly Congress was aware of this practice. At the same time, Congress assuredly appreciated the practical difficulties that would arise if it permitted mitigating matter to be presented to a board of review without first having been considered by the convening authority. Certainly, the Government should be entitled to show counterbalancing factors. To obtain this information the Government must necessarily go back to the convening authority. At best, this procedure would be unsatisfactory. Besides the element of delay, there would be great uncertainty. Military personnel are transient. So by the time the request for information reached the convening authority, those best informed about the factors bearing upon the fairness of the sentence, in all likelihood, would be transferred. It seems to us that these circumstances indicate the true meaning of the difference between the scope of the convening authority's action and that of the board of review. As Judge Brosman picturesquely noted, the convening authority can consult a "guy named Joe" for information relating to the sentence. United States v Coulter, supra, page 663. But, Congress has directed the board of review to refer only to the "entire record." What then constitutes the "entire record"?

The accused argues that the "entire record" means merely the evidence adduced at the trial. In support of his contention, he relies upon United States v Duffy, 3 USCMA 20, 11 CMR 20. In that case, this Court held that the accused's conviction could not be sustained by the reviewing authority on the basis of evidence contained in the allied papers, but not presented at the trial. See also: United States v Whitman, 3 USCMA 179, 11 CMR 179. Undeniably, evidence not presented at the trial cannot be used to support or reverse a conviction. Both the accused and the Government are entitled to challenge the admissibility of the evidence according to accepted rules of law; and each has a right to test the trustworthiness and the probative value of proffered evidence by cross-examination, and by other evidence. Different considerations apply to the sentence.

In the first instance the sentence is fixed by the court-martial. The court, of course, will normally act on the evidence presented to it. The sentence imposed by the court is not final. It cannot be increased, but it may be mitigated by the reviewing authorities. The question then arises as to whether the interests of justice require these reviewing authorities to look no further than the trial proceedings for facts which would justify a reduction in the sentence. It seems to us that an accused would be the last person to urge that rule. In any event, we think that the law is less harsh. In our opinion, justice is fostered by giving the reviewing authorities power to go outside the record of trial for information as to the sentence. See Rule 32 (c), Federal Rules of Criminal Procedure. Its purpose is to benefit, not to harm, the accused. But what of a case like this one in which some of the extra-trial facts militate against a reduction in the sentence? Would not consideration of these facts harm the accused by persuading the reviewing authorities to affirm the sentence imposed by the court-martial? The answer is necessarily "yes." But, it must be remembered that appeal from the court-imposed sentence is a matter of legislative grant not of inherent right. Congress might have provided that a legal sentence adjudged by a court-martial cannot be altered in any way by a reviewing authority. Instead, it chose to provide a procedure under which the

court's sentence can be materially reduced. This procedure insures justice; it does not defeat it. We conclude, therefore, that, contrary to the accused's contention, the words "entire record" mean more than the evidence presented at the trial. In fact, previous decisions of the Court clearly indicate that a board of review may look beyond the trial record for mitigating evidence.

In United States v Cavallaro, supra, the board of review indicated that it did not fully understand the factors which it could consider in reaching a determination as to the sentence. Remanding the case for reconsideration, we pointed out that the board of review could consider the facts set out in a psychiatric report contained in the allied papers and the matters included in a clemency recommendation by the court members, which was attached to the record of trial. In United States v Crusoe, supra, the law officer erred in defining the maximum punishment that could legally be imposed upon the accused. In the post-trial review, the staff judge advocate to the convening authority recounted, at length, the civilian and military background of the accused. He concluded with a recommendation that the sentence as adjudged by the court-martial was "appropriate." In his appeal to this Court the accused argued that the law officer's misstatement of the maximum punishment prejudiced him with regard to the sentence. We held that the sentence analysis by the staff judge advocate effectively dissipated the harm resulting from the law officer's error. We said (page 797):

"Of course, the record of trial considered by the board of review contained the extensive review of the convening authority's staff judge advocate. Despite the board's failure to render a long-form opinion, we are sure that its members were cognizant of the content of this field review. Therefore, we must conclude that they too passed on the question of appropriateness of sentence—and with no sort of misconception that the accused had been convicted of

offenses whose maximum punishment aggregated fifteen rather than only ten years. Thus all doubt is removed that the question of sentence adequacy was passed on by agencies with power—wholly wanting in this Court—to determine appropriateness in this area."

Perhaps our most forthright statement on the subject appears in United States v Simmons, 2 USCMA 105, 6 CMR 105. We there said (page 106):

". . . Article 66 of the Code, supra, however, carefully restricts the boards of review to action 'on the basis of the entire record.' The board is thus denied access both to the accused's service record and to the accused himself, even though it may, under the language of Article 66, supra, consider the allied papers attached to the trial record proper."

Oddly, the statement in the Simmons case regarding information taken from the accused's service record is relied upon by the accused to support his contention that such information can never be considered by the board of review. That is not the meaning we intended. The point we meant to make, and thought we had made, was that, traditionally, and factually, the service record itself is not a part of the "entire record" of the court-martial proceedings. We did not mean to deny to the board of review access to information extracted from the service record, if that information had been properly included in the record before it reached the board of review.

Our conclusion as to the source to which a board of review may have recourse, in acting on the sentence, is supported by the provisions of Article 38 of the Code, 50 USC § 613. Section (c) of the Article provides as follows:

"Art. 38  Duties of trial counsel and defense counsel.

• • • • •

(c) In every court-martial proceeding, the defense counsel may, in the event of conviction, forward for attachment to the record of proceed-

ings a brief of such matters as he feels should be considered in behalf of the accused on review, including any objection to the contents of the record which he may deem appropriate."

The Code does not describe the nature of the matters which may be noted in defense counsel's post-trial brief. Neither does it directly indicate to whom the brief should be forwarded. However, it is clearly inferable that the brief may include factors relating to the sentence and that it is to be forwarded to the convening authority. Moreover, we are of the opinion that Congress did not intend to limit presentation to a written brief. We think that the fair intendment of the statute contemplates an oral presentation as well. With regard to the sentence, the oral presentation may take the form of a personal interview of the accused by the convening authority's legal officer. In fact, that is the usual procedure followed by the Army and the Air Force. See: United States v Coulter, supra; United States v Crusoe, supra. Air Force Military Justice Circular No. 8, section 502 (3), July 31, 1953; JAG Chronicle, No. 2, 1952, No. 14, 1954. In many respects, the personal approach is much more advantageous to the accused than the presentation of his case by a written brief. As we said in United States v Coulter, supra (page 660):

"The accused's best chance for sentence reduction, within the courts-martial processes, comes in the initial review. It is only at that level of the appellate procedure, that he can project his traits of character and his attitudes in a personal interview."

In view of the language of Article 66 and the purpose and the scope of the power given to the board of review to reassess the sentence, we believe that there should be a free interchange of facts affecting the sentence. Certainly, Congress did not intend the sentence review to be a guessing game. Rather, it desired that the judgment of each reviewing authority be an informed judgment; that is, a judgment based on facts not fancy. We believe, therefore,

Congress intended that, as far as possible, the board of review would have available to it the same facts relating to the sentence which were considered by the convening authority in his action. If the accused submits nothing to the court-martial or to the convening authority, and the staff judge advocate's review or the convening authority's action does not contain a statement of the factors considered in evaluating the sentence, the board of review will have little information upon which to base its determination of the fairness of the sentence. Necessarily, it is limited to a consideration of the trial proceedings and the provisions of paragraph 76a of the Manual for Courts-Martial. United States v Cavallaro, supra, page 657. It seems to us to be vastly more desirable to have a "free exchange of information between boards of review and other military authorities charged with the responsibility of considering the appropriateness of any sentence." United States v Cavallaro, supra. And, in our opinion, Congress intended that result. Consequently, we hold that, under Article 66, a board of review is authorized to review as part of the "entire record" a statement of the matters considered by the convening authority in his action on the sentence. This statement may be included in the post-trial review of the convening authority's legal officer, or in his own action, or even in a separate statement included with the allied papers. Of course, justice to the accused requires that he be given a fair and reasonable opportunity to rebut or to explain any matter which may be detrimental to him. In that connection what we said in United States v Long, 5 USCMA 572, 574, 18 CMR 196, is appropriate here:

". . . If an appellate agency is going to use any post-trial information as a basis for its decision, on jurisdictional matters or in any other permissible areas, each party should be afforded an opportunity to present his, or its, side of the dispute."

The certified questions are answered as indicated. Since the majority of the board of review apparently was influenced in its review of the sentence by

**381**

a mistaken idea of the legal scope of its power, we remand the case to The Judge Advocate General of the Navy for submission to the board of review for reconsideration of the sentence, or for such other action as The Judge Advocate General may deem appropriate and which is consistent with this opinion. United States v Cavallaro, 3 USCMA 653, 14 CMR 71.

LATIMER, Judge (concurring):

I concur.

In considering the principles controlling this issue, I believe it well to accentuate a point made in the Chief Judge's opinion to the effect that we are resolving the rights and privileges of an accused after a finding and sentence. Some of the strict formality demanded before conviction is relaxed after an accused is convicted and his punishment imposed, and adherence to the rules of evidence is not compelled. In military law, a reviewing authority cannot add to the punishment imposed by a court-martial and so, if any change is made in the sentence, it must be scaled downward. Because of that restriction, an accused cannot be harmed legally by the convening authority, but he can, and often is, helped. His only privilege is to have the sentence re-evaluated in the light of the record and his service behavior pattern. But any favorable action taken by a reviewing officer is largely a matter of grace as, unless the sentence is legally excessive, the reviewing authority has the discretion to affirm the sentence as imposed.

A matter of moment in this instance is that the convening authority need not, as a matter of statute, state any reasons for his action. Absent any regulation to the contrary, the basis for an affirmance or a reduction may remain locked in the mind of the person charged with reviewing the sentence. However, to assist subsequent reviewing authorities in their consideration of the sentence, the Navy Department has by regulation imposed the following requirement on the reviewing officers:

"'* * * The convening authority, in those cases where the sentence adjudged extends to a punitive discharge, shall include in his initial action a brief synopsis of the accused's conduct record during the current enlistment or current enlistment as extended. * * * The synopsis should also include medals and awards, commendations and any other information of a commendable nature. Although not required, similar action may, if circumstances are deemed appropriate, be taken in other cases. The foregoing is not intended to usurp the legal requirements as to the admissibility of record of previous conviction.' Bureau of Naval Personnel Instruction 1626.13, 7 October 1954."

I do not believe in this setting it is necessary for us to argue at length on the refined distinctions between the powers of courts, convening authorities, and boards of review to commute or exercise clemency, and their authority to determine the appropriateness of sentence. Undoubtedly, the two intermingle in certain areas but the important question for determination here is not whether the powers are commingled but rather whether the Naval Regulation is invalid because it violates a fundamental right of an accused or is contrary to law.

The first question to be considered is whether the regulation occupies a field which is collated properly to the appropriateness of a sentence. Paragraph 76a of the Manual for Courts-Martial, United States, 1951, sets out the basis upon which a court-martial should determine the kind and amount of punishment imposed. In subsection (2) of that paragraph it provides:

". . . In the exercise of its discretion in adjudging a sentence, the court should consider evidence contained in the record respecting the character of the accused as given in former discharges, the number and character of previous convictions, the nature and duration of any pretrial restraint, and the circumstances extenuating or aggravating the offense."

In connection with the imposition of

382

the bad-conduct discharge, subsection (7) of the same paragraph provides:

"A bad conduct discharge may be imposed in any case in which a dishonorable discharge may be imposed as well as in certain other cases. It is a less severe punishment than dishonorable discharge and is designed as a punishment for bad conduct rather than as a punishment for serious offenses of either a civil or military nature. It is appropriate as punishment for an accused who has been convicted repeatedly of minor offenses and whose punitive separation from the service appears to be necessary."

I mention the matters to be considered by the court-martial to illustrate the point that in that forum when consideration is being given to the appropriateness of sentence, it is recognized that the punishment to be imposed may be affected substantially by the military character of the accused and the number of offenses committed by him. While, to be admissible in court, the offenses must have resulted in a conviction, a different principle applies to a convening authority.

Article 64 of the Uniform Code of Military Justice, 50 USC § 651, fixes his authority to act upon findings and sentence, and it provides:

"In acting on the findings and sentence of a court-martial, the convening authority shall approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved."

That Article is discussed in paragraph 88*b* of the Manual, which sets out suggested guides; but they are not intended to be all inclusive. It will be observed from the following quotation that pertinency is the only mentioned limitation:

"*Determining what sentence should be approved.*—In determining what sentence, or part thereof, should be approved, the convening authority will be guided by the principles stated in 76. The sentence approved should be that which is warranted by the circumstances of the offense and *the previous record of the accused.* Appropriate action should be taken to approve a less severe sentence when the sentence, though legal, appears unnecessarily severe. In approving severe sentences, consideration should be given to all factors, including the possibility of rehabilitation as well as the possible deterrent effect.

"The convening authority may properly consider as a basis for approving only a part of a legal sentence not only matters relating solely to clemency, such as long confinement pending trial or the fact that, as an accomplice, the accused testified for the prosecution, but any other pertinent factor." [Emphasis supplied.]

In the previous quotations is found authority for the court-martial and the convening authority to consider the character of the accused as evidenced by his military record. The court-martial, in imposing sentence, should consider his record as given in former discharges and as shown by the number and character of previous convictions. By Code and by law, it is limited to convictions by courts-martial and there is a good reason for that limitation as a bad character is apt to be seized upon by the court as evidence of guilt of the alleged offense. But no such limitation is imposed on the convening authority probably because conditions are different. He is admonished to consider the over-all previous military record of the accused after guilt has been determined.

As a matter of law, we have held that the convening authority is not fettered by the record of trial and that he may consider many matters not necessarily relevant to the appropriateness of sentence. United States v Simmons, 2 USCMA 105, 6 CMR 105. While Article 15 punishments are not admissible for consideration by a court-martial, they are imposed as punishment for minor offenses and they disclose a definite pattern of military behavior. It is contrary to common sense to say they do not cast light on the desirability of

**383**

retaining an accused in the service, and that is a proper matter to be considered in determining the appropriateness of a punitive discharge. It would seem to me that if any reviewing authority with power to affirm a sentence is to make an honest appraisal of the value of the accused to the military service, he should be permitted to consider all transgressions of the accused reflected in the service record, regardless of their gravity. I, therefore, conclude the information recorded by the convening authority had a direct bearing on the appropriateness of sentence.

The principles that I have so far expounded are not those which have caused boards of review to reach divergent results. The real problem is posed by the next step in the appellate processes as boards of review have reached contrary conclusions on their right to consider the contents of the reviewing authority's action report. Undoubtedly, they have become confused over the language we used in United States v Simmons, supra. There we stated: "In taking this action [clemency], the convening authority is not limited to the trial record. Article 66 of the Code . . . however, carefully restricts the boards of review to action 'on the basis of the entire record.' The board is thus denied access both to the service record of the accused and to the accused himself."

At first blush, it would appear that the Chief Judge's holding in this case is contrary to the statement appearing in the above quotation. Certainly it would be, if the service record of the accused had been incorporated in the action of the convening authority on the Simmons case, but it was not. Therefore, I do not believe the cases stand on the same footing. Here, we are concerned with interpreting the phrase "on the basis of the entire record," and there we were not. In the instant case, if the information set out in the action of the convening authority is part of the record on appeal, then the board of review is permitted by the Code to consider it for sentencing purposes.

**384**

I reach the conclusion that the questioned information is part of the entire record before the board for the following reasons. Article 64 of the Code requires that the convening authority act on both the findings and sentence and his action is a necessary part of the record. By Navy Department regulations, he is now directed to implement his action by setting out a synopsis of accused's conduct record. Pretermitting the privilege of an accused to be heard, which will be considered later, there is no legal reason to isolate the reasons for a decision from the decision itself and hold the latter to be part of the record and the former not. On the contrary, it is sensible to consider them as indivisible for record purposes. By way of analogy, if a board of review does not set out the reason for deciding a particular factual matter, we merely have its action before us; but once it states its views in a written decision they, too, are before us and we are better able to understand its action. We do not hide the reasons and see only the conclusion.

The Manual contemplates that the reasons for certain actions taken by a convening authority should be part of the record. It enumerates certain instances when the basis for a ruling should be set out, and I assume that if an entry is made pursuant to law, it may be considered by other appellate agencies. But, in addition, the Manual specifically states that the reasons for the disapproval of a finding of guilty may be set out in any case. Paragraph 89c(2). If the reasons for a disapproval become a part of the record, and they do, then I lean to the belief that reasons forming the base for an approval should be considered in the same light.

To meet the foregoing argument, it is contended that if a convening authority disapproves a finding, it cannot be reinstated and, therefore, his reasons cannot prejudice an accused. It is further argued that when he affirms and sets forth matters detrimental to an accused, a different result follows. To support the latter contention, it is asserted that the accused has been denied due process of law because he has

not been afforded a proper hearing and reviewing agencies will have cast before their eyes much incompetent and irrelevant evidence. The argument might be persuasive if post-trial proceedings were hedged in by rigid principles of law or inflexible rules of evidence, but they are not. By that I do not mean to say that certain privileges are not available to an accused or that he can be victimized by agents of the Government cluttering up a record on appeal. But, within reasonable limits and subject to the right of an accused to be heard, the record after trial can be augmented by post-trial proceedings. In that connection, I need go no further than to suggest that we have reversed cases when the basis for our decision was found in post-trial clemency reviews. We certainly considered they were before us as part of the record on appeal.

In my opinion in United States v Walters, 4 USCMA 617, 16 CMR 191, I attempted to point out that the convening authority fits into the military judicial system of appellate review and that post-trial matters considered by him become part of the record on appeal, provided both parties have been afforded an opportunity to present their side of the controversy. True it is that here we have a proceeding which may be ex parte, but it need not be. The accused can, and often does, submit to the convening authority reasons for a reduction or disapproval of a sentence. But even an ex parte hearing can be defended as it is better to bring post-trial matters into the open than to leave them resting in the bosom of reviewing officers. The same data will be considered in either event and, obviously, if a convening authority does not reduce his views to writing, there is no way in which an accused could hope to meet the information which formed the basis of the reviewer's action. It would be strange law indeed if a convening authority could exercise his powers in silence without infringing on a privilege of an accused, yet if he speaks out, an accused's right has been violated. That such a ruling would be absurd can well be established.

In the first instance, the accused has no possibility of undermining the base supporting an affirmance. In the latter instance, he has been furnished an opportunity to rebut the truthfulness or accuracy of the supporting evidence, even though the occasion may be late. If an accused has reason to believe that information furnished to the convening authority is not founded in fact, he can submit to that officer his rebuttal evidence. If he is uninformed, he can prepare the way before action by explaining any unfavorable entries appearing in his service record. It may well be that he must take the initiative, but that is a burden he must assume.

I have not overlooked the fact there may be instances when the convening authority may go beyond the service record; that the information used by him may not be available to the accused prior to the time of affirmance; and that it may constitute information obtained from doubtful sources. Those are possibilities, but not probabilities. The Naval Regulations limit the information to the service record and that ought to be complied with. But, in addition, most of the information used will be found in either a staff judge advocate's review or in a post-trial clemency review. But, even assuming the worst, there are two answers to those contingencies. The first is that the accused is requesting a favorable discretionary ruling and he is not entitled as a matter of right to be informed of the reasons for a denial of his request. Secondly, his version of the disputed matters can be made available to the convening authority for his reconsideration and the disputes, if any, will be perpetuated in the record for the benefit of other reviewing authorities.

If the actions and reasoning of the convening authority are recorded and the accused has submitted information he considers weighing in his favor, each side of the controversy has had, or will have, an opportunity to be heard. While only the appropriateness of sentence is before the board of review, little difficulty should be encountered by its legally trained members in sep-

arating the relevant from the irrelevant. I see no reason why a board of review is not able to evaluate properly the information touching on the appropriateness of sentence. Irrelevant matters should no more sway the board adversely to an accused than does incompetent testimony in other areas. Many times the appropriateness of sentences is determined by boards of review when they know about, but cannot consider, previous convictions. Furthermore, they reconsider sentences after part of the findings have been reversed for other than reasons of guilt, and their knowledge of the accused's character as evidenced by those offenses does not disqualify them from acting. They must assume their judicial robes and separate the good from the bad; and in this instance the separation was not necessary as the information was relevant for the purpose intended. It may have harmed the accused but it is uncontested and he pays that penalty because an unsatisfactory military record bears directly on his value to the service.

Let us assume, arguendo, that information has been included in a report by a convening authority which was based on idle rumors, gossip or which was gathered from discreditable sources. In that event I would expect members of the board of review to pay it no heed. I am willing to assume they have the judicial capacity to select and consider only that information which is competent, relevant and material to the appropriateness of sentence. Some individual members contend they cannot; but as to them, I can merely say court-martial members are instructed to disregard irrelevant evidence which sometimes gets into the record and unless it is of an inflammatory nature, we presume the instruction was followed. Members of boards of review should do much better and if it appears a convening authority was influenced by improper considerations, a board of review can correct that error by affirming only that portion of the sentence it believes to be fair and just.

**386**

BROSMAN, Judge (concurring):

I concur in the views set out in the principal opinion.

II

As the Chief Judge has observed, a distinction has long been drawn between the taking of steps to rectify inappropriateness of sentence, on the one hand, and, on the other, clemency action. For instance, the suspension of a sentence—which lies beyond the power either of a court-martial or a board of review—traditionally has been deemed to fall solely within the ambit of clemency. Yet, as I have previously pointed out, it is frequently almost impossible to differentiate between the two sorts of action. See, e. g., my concurring opinion in United States v Coulter, 3 USCMA 657, 14 CMR 75. Insofar as review of quantum of sentence is concerned, I am in entire accord with Judge Quinn that a board is under no compulsion to limit itself by some dichotomy of theory between clemency and mitigation.

At the same time, there is one matter which, I think, deserves clarification. Let us suppose that—despite an absence of evidence of aggravation—a court-martial imposes a quite severe sentence. Later, however, extensive matter in aggravation comes to light—some of which, say the presence of a civilian police record, has to do with events antedating the trial, and the remainder, say an attempted escape, with those which followed it. May such circumstances lawfully be utilized, either by the convening authority or the board of review, to uphold a sentence which would appear harsh if related only to the evidence before the court-martial which rendered it?

I gather that the Chief Judge would return an affirmative answer to this inquiry. In any event, to my mind such an answer is compelled by decisions such as United States v. Clisson, 5 USCMA 277, 17 CMR 277, and United States v Coulter, supra. In them this Court—which is empowered to review "the record" only—examined the manner in which the staff judge advocate's

review was prepared; and this required, of course, the consideration of the contents of that review. Certainly a board of review—which under Article 66(c) of the Code, 50 USC § 653, is directed to approve such a sentence as it "determines, on the basis of the *entire record,* should be approved" (emphasis supplied)—enjoys the power to consider the contents of the staff judge advocate's review.

Further, the Code does not seem to differentiate between the contents of the review which are favorable to the accused and those which are the reverse; and so I see no basis now for any such distinction in defining the powers of a board. Thus, any event—pre- or post-trial in chronology—reported in the review of the staff judge advocate would appear to form a permissible basis for sentence action either by the convening authority or the board of review; and this may include the approval of punishment which would seem inappropriate were it predicated solely on the evidence available to the trial court when the accused was convicted.

In a sense the review of the staff judge advocate will encompass in this connection the area covered by the probation officer's report in civilian practice—although there, of course, such a report will have been available to the trial judge who imposed the original sentence. In my view, an accused can find no significant cause for complaint in the circumstance that such a review may contain adverse information. After all, the initial sentence may not lawfully be increased, and—as the Chief Judge has pointed out—the Congress might permissibly have left the accused wholly at the mercy of the trial court. Indeed, this is what occurs in civilian life, where no appellate review of sentence lies. Cf. Sobeloff, The Sentence of the Court: Should There Be Appellate Review? 41 American Bar Association Journal 13.

### III

Of course, as provided in Article 38 (c), 50 USC § 613, the accused's trial lawyer may attach to the record a brief recording such items as he feels should be considered in the accused's behalf at the time the sentence is reviewed. This brief may include any sort of fact which might tend to lessen the sentence. On occasion, of course, these data will have been unknown to the defense at the time of trial. Sometimes, too, although known, they will not have been presented at that level because of counsel's fear that to have done so would have opened a floodgate of evidence in aggravation. At all events, the opportunity to submit briefs containing information of aid to the accused assists in assuring that the staff judge advocate's review will not serve as a vehicle for upholding harsh sentences through *ex parte* presentations of background information concerning the accused.