UNITED STATES, Appellee

v

RICHARD A. THOMAS, Specialist Five, U. S. Army, Appellant

12 USCMA 583, 31 CMR 169

A. Kenneth Pye, Esquire, argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel W. H. Blackmarr, Captain Jerome D. Meeker, and First Lieutenant Burnett H. Radosh.

First Lieutenant Peter J. McGinn argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel James G. McConaughy, Major Francis M. Cooper, and First Lieutenant Alvin B. Fox.

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial upon a charge of premeditated murder, in violation of Uniform Code of Military Justice, Article 118, 10 USC § 918, the accused was found guilty of unpremeditated murder, in violation of the same Article, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for eighteen years, and reduction to the lowest enlisted grade. The convening authority reduced the period of confinement involved to fifteen years but otherwise approved the sentence. The board of review affirmed without opinion. We granted accused's petition solely on an issue relating to the law officer's instructions on sentence.

Following announcement of the findings of guilty and receipt of matters in mitigation and extenuation, an out-of-court hearing was held with respect to the question of the proper maximum sentence. Over objection by defense counsel, who specifically called attention to the provisions of Code, supra, Article 52, 10 USC § 852, the law officer ruled that the death sentence might be imposed for the offense of unpremeditated murder.

Thereafter, in open court, the law officer informed the members that the maximum sentence which might be imposed was death.

The Government concedes before us that the law officer erred to accused's prejudice when he so advised the court-martial. That concession is proper. The legal maximum penalty for unpremeditated murder is dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for the term of accused's life, with the possible addition of certain other accessory penalties. Code, supra, Articles 52, 118. Indeed, we are astonished at the law officer's conclusion that accused might properly be subjected to capital punishment, particularly when the express limitation in the Code concerning imposition of the death penalty was called to his attention. Be that as it may, in view of the soundly conceived concession by the United States, the question before us narrows to the nature of the remedy which must be afforded accused in order to purge the record of prejudice.

The Government points out that the error was recognized by the staff judge advocate and convening authority. Expressly finding that the sentence as adjudged was appropriate, the convening authority nevertheless reduced the period of confinement to fifteen years in order to eliminate any possible harm to accused. Thus, the Government argues that the error has been cured by reassessment of the sentence at the convening authority level. In support of this contention, reliance is placed on our decision in United States v Williams, 4 USCMA 69, 15 CMR 69.

In the Williams case, the accused was convicted, during wartime, of sleeping on post. The law officer, failing to note that the convening authority had directed that the case be treated as noncapital, read the provi-

sions of Code, supra, Article 113, 10 USC § 913, to the court members and informed them that the Table of Maximum Punishments had been suspended with respect to the offense charged. This Court concluded that the members "quite probably deliberated on sentence with the misconception that a death sentence might lawfully be imposed." United States v Williams, supra, at page 75. It was nevertheless held that the effect of this error might be purged by reassessment of the sentence.

Insofar as our decision in United States v Williams, supra, is authority for the proposition that an █ error of this magnitude in stating the maximum imposable sentence may be cured by reassessment of the penalty, it is hereby overruled. Too many imponderables are involved to permit weighing and assessing the appropriateness of punishment when the standard supplied those deliberating on sentence erroneously allowed consideration of the supreme penalty. That the law officer's awesome pronouncement had substantial impact upon the court-martial's deliberations is conceded. To this concession, we must add our belief that its effect upon the court members cannot be overcome by appellate measures.

When the law officer erroneously and affirmatively informs the members of a court-martial that they are authorized to sentence an accused to death, we believe that a rehearing on the sentence should be ordered. True it is that we have frequently permitted errors in sentencing procedure to be cured by reassessment. United States v Crusoe, 3 USCMA 793, 14 CMR 211; United States v Redenius, 4 USCMA 161, 15 CMR 161; United States v McVey, 4 USCMA 167, 15 CMR 167; United States v Walker, 8 USCMA 640, 25 CMR 144. On the other hand, we have not hesitated to order resentencing proceedings at the primary level when the interests of justice have been deemed to require it. United States v Voorhees, 4 USCMA 509, 16 CMR 83; United States v Oakley, 7 USCMA 733, 23 CMR 197; United States v Middleton, 12 USCMA 54, 30 CMR 54. Indeed, in United States v Oakley, supra, at page 736, we pointed out:

". . . Since there is great disparity between the law officer's instruction on the maximum punishment and the actual punishment that could be imposed, we believe that the interests of justice require a redetermination of the sentence by the court-martial. United States v Johnson, 7 USCMA 488, 22 CMR 278."

In *Oakley*, supra, the difference between the correct maximum punishment and that which the law officer advised the court was five years and four months and the characterization of the possible punitive discharge as dishonorable rather than as a separation for bad conduct. Here, the gulf between the legal maximum sentence and that upon which the court was allowed to deliberate is the immeasurable chasm between life and death. We have no way of determining the impact of this inexcusable pronouncement upon the court members, and justice to the accused requires that we order resentencing before another court-martial.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Army. A rehearing on the sentence is ordered.

Judge KILDAY concurs.

Chief Judge QUINN concurs in the result.