IN THE CASE OF


UNITED STATES, Appellee

v.

Michael D. BAIER, Private First Class (E-2)
U.S. Marine Corps, Appellant

No. 04-0340

Crim. App. No. 200200476

United States Court of Appeals for the Armed Forces

Argued October 26, 2004

Decided  January 3, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
CRAWFORD, EFFRON, BAKER and ERDMANN, JJ., joined.


Counsel

For Appellant:  Lieutenant Commander Eric J. McDonald, JAGC, USN
(argued); Lieutenant Jason S. Grover, JAGC, USN (on brief).

For Appellee: Captain Wilbur Lee, USMC (argued); Lieutenant
Colonel William K. Lietzau, USMC (on brief); Lieutenant Frank
Gatto, JAGC, USNR, Commander Robert P. Taishoff, JAGC, USN.

Military Judge:  R.K. Fricke



**This opinion is subject to editorial correction before final publication**.

Chief Judge GIERKE delivered the opinion of the Court.

This case concerns the legal standard that the Courts of Criminal Appeals use when carrying out their responsibility under Article 66(c) of the Uniform Code of Military Justice[1] (UCMJ) to ensure that a sentence is appropriate. The lower court's opinion quotes an incorrect standard for determining sentence appropriateness. In using that language, however, the lower court cited a 19-year-old summary disposition of this Court that was marred by a mistaken and misleading citation. That mistake is a weed in the garden of our jurisprudence. We will now pull it up by the roots. More importantly, we will also discuss the appropriate standard of review that the Courts of Criminal Appeals must apply in fulfilling their statutory obligation to ensure sentence appropriateness.

Background

In a trial before a military judge alone, Appellant pleaded guilty to and was found guilty of conspiracy to wrongfully distribute LSD, ecstasy, and cocaine; wrongful use of LSD; wrongful distribution of LSD, ecstasy, and cocaine; and breaking restriction in violation of Articles 81, 112a, and 134 of the Uniform Code of Military Justice.[2] The military judge sentenced Appellant to confinement for 30 months, forfeiture of all pay

---

[1] 10 U.S.C. § 866(c) (2000).
[2] 10 U.S.C. §§ 881, 912a, 934 (2000).

2

and allowances, reduction to pay grade E-1, and a dishonorable discharge. The convening authority approved the sentence as adjudged and, in accordance with the pretrial agreement, suspended confinement in excess of 24 months for 12 months from the date of trial.

When his case was before the Navy-Marine Corps Court of Criminal Appeals, Appellant raised an assignment of error asserting that a dishonorable discharge was inappropriately severe for his offenses. Appellant urged the lower court to affirm a bad-conduct discharge in its place. In an unpublished per curiam opinion, the lower court rejected Appellant's request and affirmed the sentence as adjudged. We granted Appellant's petition to determine whether the lower court used the correct legal standard when determining the appropriateness of Appellant's sentence.[3]

## Discussion

In its opinion affirming Appellant's sentence, the lower court quoted Article 66(c) and noted that its task was to determine "whether the accused received the punishment he deserved." Citing our opinion in United States v. Healy,[4] the lower court properly distinguished its sentence appropriateness role from the convening authority's power to grant clemency.

---

[3] 60 M.J. 119 (C.A.A.F. 2004).

[4] 26 M.J. 394 (C.M.A. 1988).

The lower court then cited our decision in United States v. Lanford[5] for the proposition that it had the authority to "disapprove any portion of a sentence that it deems inappropriately severe."

The issue in this case arises from the next passage in the lower court's opinion:

> An appropriate sentence results from an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." United States v. Rojas, 15 M.J. 902, 919 (N.M.C.M.R. 1983) (citing United States v. Snelling, 14 M.J. 267 (C.M.A. 1982)), aff'd, 20 M.J. 330 (C.M.A. 1985). When reviewing a sentence it is important to consider the sense of justice of the community where the crime was committed which should not be disturbed unless "the harshness of the sentence is so disproportionate to the crime as to cry out for equalization." Rojas, 15 M.J. at 919.

After discussing the facts of Appellant's case, the lower court concluded its sentence appropriateness analysis with another citation to Rojas: "The appellant received the individual consideration required based on the seriousness of his offenses and his own character, which is all the law requires. Rojas, 15 M.J. at 919. As such, we decline to grant relief."

Based on that language, it is impossible for us to determine whether the lower court conducted an independent assessment of the appropriateness of Appellant's sentence or

---

[5] 6 C.M.A. 371, 376, 20 C.M.R. 87, 92 (1955).

merely deferred to the "individual consideration" Appellant had previously received from the military judge and the convening authority. Nor can we determine whether the lower court independently assessed the sentence's appropriateness for this particular offender or merely determined that the sentence was not "so disproportionate to the crime as to cry out for equalization."

The lower court's reliance on its 1983 Rojas decision leads to this confusion. In 1981, Lance Corporal Armando Rojas was sentenced to death for the premeditated murder of another Marine.[6] The Navy-Marine Corps Court affirmed the findings and death sentence in February 1983.[7] Eight months later, this Court issued its opinion in United States v. Matthews,[8] which invalidated the death penalty system under which Rojas had been tried and condemned. In January 1984, we set aside the Navy-Marine Corps Court's Rojas decision and remanded the case "for a de novo review by a new panel containing no members of the panel which originally reviewed the case."[9] This disposition was designed not only to allow the lower court to apply Matthews to the case, but also to moot an issue concerning alleged judicial impropriety when the Navy-Marine Corps Court originally

---

[6] 15 M.J. at 905.
[7] Id. at 932.
[8] 16 M.J. 354 (1983).
[9] United States v. Rojas, 17 M.J. 154, 155 (C.M.A. 1984).

considered the Rojas case.[10]  The lower court's opinion in this case failed to note that Rojas decision.

In August 1984, consistent with our decision in Rojas, a new three-judge panel of the Navy-Marine Corps Court set aside Rojas's death sentence and instead affirmed a sentence including confinement for life.[11]  In June 1985, we issued an order that simply affirmed "the decision of the United States Navy-Marine Corps Court of Military Review."[12]  Unfortunately, the published version of this order contained something that the original order did not:  a citation to "15 M.J. 902."[13]  That is the citation for the Navy-Marine Corps Court's original February 1983 decision that we set aside in January 1984.  This citation was obviously incorrect because we were affirming the Navy-Marine Corps Court's August 23, 1984 opinion issued by the new panel.  We were not affirming that court's earlier opinion, which had affirmed a death sentence imposed under unconstitutional procedures, which we had expressly set aside, and which the lower court had superseded with a more recent opinion.

The error in our published Rojas order may have contributed to the lower court's confusion in this case.  The Navy-Marine

---

[10] Id.
[11] United States v. Rojas, NMCM 81 2019, 1984 CMR LEXIS 3773, at *6 (N-M.C.M.R. Aug. 23, 1984) (footnote omitted).
[12] 20 M.J. 330 (C.M.A. 1985) (summary disposition).
[13] Id.

6

Corps Court's opinion followed the quotation from its superseded 1983 Rojas opinion with a citation to that decision accompanied by the erroneous subsequent history, "aff'd, 20 M.J. 330 (C.M.A. 1985)." Let there be no further confusion: we did not affirm the Navy-Marine Corps Court's February 1983 Rojas decision, but rather "set [it] aside."[14]

More importantly, the language that the lower court quoted in this case from its superseded Rojas opinion[15] is legally incorrect. A Court of Criminal Appeals must determine whether it finds the sentence to be appropriate. It may not affirm a sentence that the court finds inappropriate, but not "so disproportionate as to cry out" for reduction. As the Army Court has recognized, Article 66(c)'s sentence appropriateness provision is "a sweeping Congressional mandate to ensure 'a fair and just punishment for every accused.'"[16] Article 66(c) "requires that the members of [the Courts of Criminal Appeals] independently determine, in every case within [their] limited Article 66, UCMJ, jurisdiction, the sentence appropriateness of each case [they] affirm."[17]

---

[14] Rojas, 17 M.J. at 155.
[15] The language that the lower court quoted originated in United States v. Usry, 9 M.J. 701, 704-05 (N.C.M.R. 1980).
[16] United States v. Bauerbach, 55 M.J. 501, 504 (A. Ct. Crim. App. 2001) (quoting Lanford, 6 C.M.A. at 378, 20 C.M.R. at 94).
[17] Id. at 506.

It is possible that in this case, the lower court "independently determined" the sentence's appropriateness. But the lower court's recitation of an incorrect standard from its superseded Rojas opinion suggests that it may have relied on an improperly circumscribed standard. To ensure that Appellant was not prejudiced by the lower court's erroneous view of the law, we set aside the lower court's opinion as to the sentence and remand the case for a new Article 66(c) sentence appropriateness determination using the correct standard. Of course, we express no opinion as to how that new sentence appropriateness review should be resolved. That is a matter committed to the sound discretion of the lower court, using proper legal standards.

## Conclusion

The decision of the Navy-Marine Corps Court of Criminal Appeals is affirmed as to findings and set aside as to sentence. The record is returned to the Judge Advocate General of the Navy for remand to the Navy-Marine Corps Court for a new sentence appropriateness review. Thereafter, Article 67 will apply.