# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39230**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Benjamin B. CATT**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 1 October 2018

———————————

*Military Judge:* Brian D. Teter.

*Approved sentence:* Bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 30 January 2017 by GCM convened at Tinker Air Force Base, Oklahoma.

*For Appellant:* Major Kirk W. Albertson, USAF; Major Patricia Encarnación Miranda, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge MINK joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

DENNIS, Judge:

A general court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of one specification of wrongfully using

Oxycodone and three specifications of assault consummated by a battery, in violation of Articles 112a and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 928. A military judge sitting alone sentenced Appellant to a bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority suspended the adjudged total forfeitures, deferred the mandatory forfeitures until action, and waived the mandatory forfeitures for the benefit of Appellant's spouse and his dependent children. He otherwise approved the sentence as adjudged.

Appellant raises two issues on appeal: (1) whether the military judge erred by allowing improper sentencing evidence under Rule for Courts-Martial (R.C.M.) 1001; and (2) whether trial defense counsel was ineffective by improperly advising Appellant regarding clemency, failing to introduce character evidence in sentencing, and advising Appellant not to submit clemency matters. We find no prejudicial error and affirm.

## I. BACKGROUND

Having himself been a victim of severe physical, emotional, and sexual abuse, Appellant, by his own admission, "allowed anger to control his life." Appellant's anger eventually led to three instances of violence towards his family. On one occasion, Appellant began arguing with his wife, CC, and grabbed her neck with his hand. On a second occasion, Appellant bit his then-four-year-old daughter's cheek when she refused to go to bed. On a third occasion, Appellant struck CC in the face with his hand after she refused to let him touch her. When CC later moved out of their home, Appellant discovered and used Oxycodone pills CC had been prescribed and left behind. Appellant was convicted, in accordance with his pleas, of each of these offenses.

## II. DISCUSSION

### A. Improper Sentencing Evidence

#### 1. Additional Facts

During its sentencing case against Appellant, the Prosecution called ED, Appellant's sister. After confirming that she had the "opportunity to interact with" Appellant and his family, trial counsel asked her whether her brother had "a certain view about women, how they should be treated in the house." Defense counsel objected to the evidence as irrelevant and improper aggravation evidence under R.C.M. 1001(b)(4). Senior trial counsel offered the following proffer in response:

> I think the testimony would be that a woman, particularly is his
> property within his household. His wife, particularly, but also

tied to his daughter . . . who was bit in the face. I think that this is relevant to show that he treated his wife particularly like his property to explain the aggravation behind the two assaults consummated by a battery, which the accused has pled guilty to.

When the military judge asked whether it was character evidence, senior trial counsel responded:

It's not character. It's aggravation evidence. It's part of the stipulation of fact where [CC] talks about how he--in terms of this slap in the kitchen that I can touch you if I want. This talks about that. . . . We're not saying character evidence is a bad person because he has these beliefs, but this colors and this explains why he hit his wife on two occasions and why he bit his daughter.

Trial defense counsel responded:

Your Honor, if the government is able to lay the foundation where this witness can say, "The accused told me I committed these offense because of these views," I'd tend to agree that that is an aggravator, but if she's just eliciting an opinion in broad and can't actually connect that to the instances then, Your Honor, it is improper character evidence and it's not relevant for purposes of sentencing.

The military judge deferred ruling on trial defense counsel's objection noting that he would "expect a little more foundation." Senior trial counsel then had the following exchange with ED:

Q. How long have you known your brother for?

A. My whole life.

Q. All his life?

A. Yes.

Q. And you're his older sister?

A. Yes, sir.

Q. Okay. Again, you grew up together?

A. Yes, sir, we did.

Q. Did you all live together at a certain point?

A. We did. There were periods of separation where he lived with our grandparents, I lived with my grandparents at times, but for the most part we were together.

Q. In the last few years you've had an opportunity to interact with him on his views on the bible or views on women in general?

A. Yes, sir. We've had conversations.

Q. Okay. And what I specifically want to talk about was there ever a conversation that you had or you overheard your brother state about his feelings on whether or not he could basically put his hands on his wife or children?

A. He believed that a wife should be submissive to their spouse and that if they wanted to do anything to that spouse they could.

Trial defense counsel renewed his objection which the military judge summarily overruled. Trial counsel later argued that Appellant used, among other things, his religion to "mentally pin" CC in her situation. "She was supposed to be subservient to him, that's his outlook." Trial counsel asked the military judge to sentence Appellant to four to five years of confinement and to consider a dishonorable discharge.

**2. Law and Analysis**

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). It is an abuse of discretion for the military judge to fail to properly follow the appropriate legal framework for considering evidence. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted).

R.C.M. 1001(b)(4) permits a trial counsel to "present evidence as to any aggravating circumstances directly relating to or resulting from the offense of which the accused has been found guilty." "The meaning of 'directly related' under R.C.M. 1001(b)(4) is a function of both what evidence can be considered and how strong a connection that evidence must have to the offenses of which the accused has been convicted." *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). It is well-established that "the link between the R.C.M. 1001(b)(4) evidence of uncharged misconduct and the crime for which the accused has been convicted must be direct as the rule states, and closely related in time, type, and/or often outcome, to the convicted crime." *Id.* at 281–82.

As he did at trial, Appellant asserts that the military judge erred in admitting this evidence because the Government failed to establish the requisite nexus between Appellant's purported belief that a wife should be submissive to her spouse and the offenses of which Appellant was found guilty. Citing *United States v. Martin*, 20 M.J. 227, 232 (C.M.A. 1985) (Everett, C.J., concurring in the result), the Government argues that ED's testimony established

Appellant's motive to commit the offense which "often serves a proper and useful function during the sentencing phase of a trial . . . ." Though evidence of Appellant's motive may be admissible in the presentencing hearing, the record is void of any evidence that the specific belief ED testified to demonstrated Appellant's motive to commit the assaults of which he was convicted.

"An accused's attitude toward the offense of which he has been convicted is directly related to that offense and relevant to fashioning a sentence appropriate to both the offense and offender." *United States v. Alis*, 47 M.J. 817, 825 (A.F. Ct. Crim. App. 1998) (citation omitted). The appellant in *Alis* served as a staff judge advocate and was convicted of fraternization after developing a relationship with an enlisted member working in his office. While their relationship was ongoing, the appellant became aware of an incident of fraternization in another unit. He later "pushed" the unit's commander to punish the officer more harshly because fraternization "took away from the Corps." In finding that the evidence was properly admitted, we noted the significance of evidence that the appellant had engaged in sexual intercourse with his enlisted subordinate the day before he made the statement. *Id.*

The facts in *Alis* are notably distinguished from the facts before us. Here, it is unclear from ED's testimony whether Appellant stated or ED surmised that Appellant believed wives should be submissive to their spouses. If, as the Government asserts, it was Appellant's own statement, there is no evidence as to when the statement was made or the context in which it was made. *See United States v. Ringuette*, 29 M.J. 527 (A.F. Ct. Crim. App. 1989) (finding that the appellant's statements as to his motive for the offenses made during or immediately after the commission of the charged offenses were properly admitted). In response to the military judge's request for "more foundation," trial counsel solicited testimony about ED's relationship with Appellant. Had trial counsel elicited testimony about when or in what context Appellant made such statements, there may very well have been a sufficient nexus to admit the testimony as a matter in aggravation. In the absence of any evidence connecting ED's testimony to the offenses of which Appellant was found guilty, we find that the military judge abused his discretion in admitting the evidence.

Our analysis does not end there as "[w]e test the erroneous admission . . . of evidence during the sentencing portion of a court-martial to determine if the error substantially influenced the adjudged sentence." *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005) (citation omitted). We consider the following four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

Appellant has failed to establish prejudice. Appellant's crimes involved multiple assaults against his wife and an egregious assault on his four-year-old daughter. In addition to the serious nature of Appellant's crimes, his service record was poor. The sentencing evidence against Appellant included several letters of reprimand and counseling. Both Appellant's wife and the guardian for his daughter gave compelling statements for the military judge's consideration pursuant to R.C.M. 1001A. Trial counsel only briefly referenced ED's testimony in his sentencing argument. Even in the absence of ED's testimony, Appellant stipulated that, in the midst of assaulting CC, he said "[y]our body is not your own and it belongs to me and I can touch you if I want." Appellant further stated that he bit his daughter to control her behavior—a statement trial counsel relied upon to argue that Appellant deserved a dishonorable discharge. Put another way, the military judge received other evidence of Appellant's motives, properly admitted and directly related to the offenses, which struck a similar chord to ED's testimony.

Appellant asserts in particular that the testimony "had a substantial influence on the adjudged bad conduct discharge." We disagree. The maximum punishment Appellant could have been adjudged included a dishonorable discharge, confinement for eight years, total forfeitures, and reduction to the grade of E-1. Given the seriousness of Appellant's offenses and fact that the case was tried before a military judge sitting alone, we are confident neither ED's testimony nor trial counsel's use of the testimony in argument had a substantial influence on the imposition of a bad-conduct discharge in particular, or on the adjudged sentence in its entirety. Furthermore, having considered the character of this offender, the nature and seriousness of his offenses, and the entire record of trial, we find his sentence appropriate. *United States v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F. 2005).

## B. Ineffective Assistance of Counsel

Appellant's claim of ineffective assistance of counsel is three-fold. More specifically, Appellant alleges that his trial defense counsel were ineffective in that they: (1) improperly advised Appellant regarding clemency; (2) failed to introduce character evidence in sentencing; and (3) advised Appellant not to submit clemency matters. We disagree.

### 1. Additional Facts

Appellant's sentencing case consisted only of his written and oral unsworn statements. Just before deliberating on Appellant's sentence, the military judge asked whether Appellant had been informed of his post-trial and appellate rights. Both Appellant and his trial defense counsel affirmatively responded. As is custom in Air Force courts-martial, the military judge asked trial defense counsel to provide a written copy of Appellant's rights advisement

to be included as an appellate exhibit in the record of trial. Paragraph nine of the written advisement includes a statement that the convening authority "may take action on the findings and/or approve all, some, or none of the sentence adjudged in his or her sole discretion[.]"

After receiving the record of trial and the staff judge advocate's recommendation, Appellant submitted a written waiver of his right to submit clemency matters. In it, Appellant stated, "This waiver is voluntary and no one has coerced me in any way or made any promises in regard to my decision."

Both Appellant and trial defense counsel submitted declarations regarding Appellant's allegation of ineffective assistance of counsel. Appellant's declaration asserts that he provided three character letters to his trial defense counsel, one of which described Appellant as a good duty performer and two others which "cast doubt on [CC]'s allegations." He also provided his trial defense counsel with family photographs. He was surprised when neither the letters nor the photographs were introduced during his sentencing case. With regard to his decision to submit clemency matters to the convening authority, Appellant asserts that the first time his trial defense counsel informed him that the convening authority could not disapprove the adjudged confinement or bad-conduct discharge was when he was given the opportunity to submit clemency matters. According to Appellant, but for the advice of his trial defense counsel, he would have sought clemency and provided the sentencing exhibits that had not been offered during his court-martial. He also would have informed the convening authority that the effects he suffered after being held in solitary confinement for 34 days.[1]

By order of this court, Appellant's two trial defense counsel each submitted a declaration outlining their consultation with Appellant regarding his sentencing case and post-trial and appellate rights. Counsel confirmed that Appellant had provided three character letters and photographs, but they made a strategic decision not to offer them. They point to three reasons why they decided not to offer the evidence. First, during pretrial interviews with the Government, "the witnesses no longer maintained their opinions as written in their letters." Second, they wanted to avoid relaxing the rules of evidence to prevent the Government from introducing additional letters of reprimand and counseling, including a letter of reprimand regarding an uncharged incident between Appellant and his wife. Finally, they wanted to focus Appellant's sentencing case on his taking responsibility for his actions. With regard to Appellant's claim that he was misinformed of the convening authority's power to

---

[1] Appellant's declaration is the only evidence before the court that Appellant spent 34 days in solitary confinement. Appellant does not raise, nor do we address, any issue regarding his post-trial confinement conditions.

grant relief and advised not to submit clemency matters, both counsel maintained that after sentence was announced they informed Appellant of how Article 60, UCMJ, 10 U.S.C. § 860, applied to the convening authority's power to grant clemency. They also maintain that they did not advise Appellant not to submit clemency.

### 2. Law and Analysis

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The United States Court of Appeals for the Armed Forces has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

We find no merit in Appellant's allegation that his trial defense counsel were ineffective in failing to introduce sentencing exhibits during his trial. "Effective advocacy requires an astute, reflective evaluation of a set of circumstances with rational, tactical trial choices flowing therefrom." *United States v. Burt*, 56 M.J. 261, 265 (C.A.A.F. 2002). Here, trial defense counsel made a rational tactical decision not to expose Appellant to the full weight of his prior misconduct including additional misconduct related to Appellant's treatment of his wife. Had the evidence been introduced, it would have allowed the Government to introduce evidence of the witness' recantations and served to discount the benefit Appellant would have received from his guilty plea.

We look to Appellant's own words to resolve his remaining claim of ineffective assistance of counsel. Appellant made clear that *after* being informed of the convening authority's limited ability to grant clemency, he freely and voluntarily made the decision to waive his right to submit clemency. Even if we were to assume *arguendo* that the advice given to Appellant was deficient, Appellant has not established how the advice resulted in prejudice. For this reason we need not resolve the factual dispute between Appellant's declaration and that of his trial defense counsel. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) (a post-trial evidentiary hearing is not required if the facts alleged would not result in relief.) There are no set rules covering the wide spectrum of decisions a trial defense counsel must make in a given case, but to have been unreasonable the counsel's performance must have been prejudicial. *Strickland*, 466 U.S. at 696. We find no prejudice here.

Accordingly, we deny Appellant's claim of ineffective assistance of counsel.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.[2]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[2] We note that the expurgated Court-Martial Order includes names of minor children in the restatement of the convening authority's action. We direct the promulgation of a corrected expurgated court-martial order.