# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

_____

### No. 201700112

_____

### UNITED STATES OF AMERICA
Appellee

v.

### BRIAN J. WAYMEL
Captain (O-3), U.S. Marine Corps
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Mark D. Sameit, USMC.
Convening Authority: Commanding General,
Marine Corps Recruit Depot/Western Recruiting Region,
San Diego, CA.
Staff Judge Advocate's Recommendation: Captain Zachary A.
Phelps, USMC; Addendum: Lieutenant Colonel Jeffrey V. Munoz,
USMC.
For Appellant: Commander Donald R. Ostrom, JAGC, USN.
For Appellee: Lieutenant Commander Brian C. Burgtorf, JAGC,
USN; Major Kelli A. O'Neil, USMC.

_____

Decided 31 August 2017

_____

Before MARKS, RUGH, AND JONES, _Appellate Military Judges_

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

_____

RUGH, Judge:[1]

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of two specifications of violating a general order and one specification of conduct unbecoming an officer, in violation of Articles 92 and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892 and 933 (2012). The military judge sentenced appellant to 120 days' confinement and a dismissal. The convening authority (CA) approved the sentence and, except for the dismissal, ordered the sentence executed.

The appellant now asserts as error that his sentence to a dismissal was inappropriately severe. We agree.

## I. BACKGROUND

While deployed to Afghanistan from July 2013 to February 2014, the appellant learned that his wife was leaving him. Despite a brief reconciliation, he returned to duty in San Diego a single father with shared custody of their four-year-old daughter. During this time, the appellant met and became friends with Ms. DS, the wife of a Marine Corps staff sergeant (E-6) assigned to a separate command from the appellant. Ms. DS and her husband shared on-base housing with his three children. However, they slept in different rooms and considered themselves more "friends than spouses."[2]

At trial, the government called the staff sergeant during presentencing to discuss the relationship between the appellant and Ms. DS:

> Q [trial counsel]: How's that make you feel?
>
> A [staff sergeant]: Like I said, a little indifferent. It – obviously, as a person it's, kind of, offensive, but at the same time, you know, I don't know the severity of it. If it was an intimate thing, then it's, kind of, a little hurtful, but my wife and I have been kind of split up for, like, the last two years. So, like, for any man it's, you know, a little hurtful, but I'm indifferent to it to be honest.[3]

While initially the appellant hired Ms. DS to babysit his daughter, their relationship became more intimate over time. The appellant would often stay the night with Ms. DS at her on-base residence, and neighbors observed him around the neighborhood, holding hands with or kissing Ms. DS. While at least one neighbor knew that the appellant was a Marine, none testified that

---

[1] Judge Rugh took final action in this case prior to detaching from the court.

[2] Record at 312.

[3] *Id.*

they were aware of his rank. And another neighbor confused the appellant for Ms. DS's husband—wholly unaware of anything untoward until later informed by investigators.

At work, the appellant was equally open about the nature of his relationship with Ms. DS, bringing her to command functions and including her in a birthday celebration with fellow officers from work. However, none appeared to know that Ms. DS was still married to a Marine Corps staff sergeant, and those who discussed the relationship believed (correctly) that the appellant had been separated for a lengthy period of time or that he was already divorced.

In August 2016, after a series of debilitating medical issues, the appellant moved into Ms. DS's home so that she could care for both him and his daughter during his recovery. He brought with him his AR-15 rifle, which he left in its case in the trunk of his car, and .380 pistol, which he stored in an upstairs closet in Ms. DS's home. When he brought both weapons on base, he failed to register them with the base Provost Marshall's Office in violation of a station general order.

A few days into the appellant's recovery, Ms. DS called law enforcement officers to the house after she and the appellant argued. Officers then learned of the appellant's relationship with Ms. DS and of his unregistered possession of the two firearms. The appellant was arrested and placed in pretrial confinement where he remained until his court-martial.

## II. DISCUSSION

In accordance with Article 66(c), UCMJ, a military appellate court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." This is a broader mandate than merely striking such sentences as are "'so disproportionate as to cry out' for reduction." *United States v. Baier*, 60 M.J. 382, 382 (C.A.A.F. 2005).

Instead, sentence appropriateness involves the function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

With full consideration to the nature and seriousness of the specific offenses committed and the appellant's individual characteristics, including his nine years of service and his deployment to Afghanistan, we are convinced

that the appellant's sentence to a dismissal was inappropriately severe. As a result, it must not be approved.

### III. CONCLUSION

The findings and so much of the sentence as provides for 120 days' confinement are affirmed.

Senior Judge MARKS concurs.

JONES, Judge (concurring in part):

I concur with affirming the findings and the adjudged confinement, but applying the principles set out in *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988) and *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) to the facts of this case, I would also affirm the adjudged dismissal.

For the Court

R. H. TROIDL
Clerk of Court