# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

**No. 201800129**

———————————————

**UNITED STATES**
*Appellee*

v.

**Emiliano DELEON, Jr.**
Chief Warrant Officer 5, U.S. Marine Corps
*Appellant*

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

*Military Judge:* Lieutenant Colonel Leon J. Francis, USMC.

*For Appellant:* Lieutenant Colonel Lee C. Kindlon, USMCR.

*For Appellee:* Lieutenant Kimberly Rios, JAGC, USN;
Lieutenant Jonathan Todd, JAGC, USN;
Lieutenant Commander Ian Maclean, JAGC, USN.

———————————————

Decided 11 December 2018

———————————————

Before HUTCHISON, TANG, and LAWRENCE,
*Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

LAWRENCE, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of possessing child pornography, distributing child pornography, and communicating indecent language, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2016). The military judge sentenced the appellant to seven years' confinement and a

dismissal. The convening authority (CA) approved the sentence and, in accordance with a pretrial agreement, suspended all confinement in excess of 60 months.

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant alleges a single error: that the military judge's sentence was inappropriately severe.[1] Having carefully considered the record of trial and submissions of the parties, we conclude the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## I. BACKGROUND

The appellant admitted to searching the Internet for child pornography and then downloading the images he found—consisting mostly of female prepubescent children engaged in sexual acts with both adults and other children—onto his personal laptop computer. Once the appellant downloaded the images to his laptop, he transferred them to a thumb drive. A hidden folder on the thumb drive contained over 300 images of suspected child pornography, including approximately 130 images depicting known child victims from 45 different victim series, as identified by the National Center for Missing and Exploited Children. The appellant admitted he saved the images of child pornography so he could view them for his sexual arousal.

The appellant also created a personal email account using a fictitious name, providing his government email address as the recovery email to establish the account. The appellant used this personal email account to communicate with at least three different people to whom he distributed images of child pornography from his residence aboard Marine Corps Base Camp Pendleton, California. At least one person sent him child pornography in return. In his correspondence with these three individuals, the appellant gave his opinions on the images he was sending and asked for their opinions in return. Finally, the appellant engaged in a string of email communications with a woman he knew as MM, one of the three people to whom he distributed the

---

[1] In the appellant's brief, he alleges the military judge awarded an inappropriately severe sentence for two offenses: possession of child pornography and indecent language. The appellant's brief fails to note the appellant's conviction for distributing child pornography—an offense that carries a 20-year maximum sentence. Although the appellant did not note this conviction in his brief, the military judge was aware of the charges for which he was sentencing the appellant, and we take into account all of the appellant's offenses when reviewing his sentence.

child pornography. He used indecent language to describe his desire to meet her during an upcoming official Marine Corps-funded trip so they could share child pornography. He also described how he wanted to join MM in engaging in sexual acts with a "little girl."[2]

## II. DISCUSSION

### A. Standard of review

Under authority granted us by Article 66(c), UCMJ, we conduct a *de novo* review of sentence appropriateness. *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005). We must review the entirety of the record to independently "assur[e] that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.A.A.F. 1988). Although we have broad discretion to grant relief under Article 66(c), UCMJ, we have no authority to engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010). Our mandate is to ensure an appropriate sentence is rendered through "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

### B. The government's case in aggravation

The government requested the military judge consider the matters addressed during the providence inquiry, including the appellant's sworn statements and a stipulation of fact, and, without objection by the appellant, the military judge granted that request. Additionally, the government presented the testimony of the Naval Criminal Investigative Service (NCIS) agent who investigated the appellant's case. The agent described the genesis and progress of the investigation and the results of the forensic review of the appellant's digital evidence. Specifically, the agent described how he unmasked deliberately hidden folders on the appellant's thumb drive—a thumb drive that the appellant told investigators contained school papers—to reveal a folder in which the appellant had saved over 300 images of suspected child pornography, with multiple different "last accessed" dates. Most of the images were distinct—not duplicates. The agent also described recovering a Toshiba laptop computer from the appellant's home. Computer forensic analysts found over 200 suspected child pornography files and forensic evidence that showed the appellant's thumb drive had recently been accessed using

---

[2] Prosecution Exhibit 1 at 6-8.

this laptop.[3] The agent also described the appellant's Internet search history, which showed the appellant visited websites with names suggestive of child pornography, and he also described the appellant's use of a Russian image-sharing website where the appellant maintained an account. Many of the appellant's images of child pornography contained names similar to the domain name of the Russian file-sharing website. Finally, the agent testified about his review of the appellant's email account, which the appellant used to send images of child pornography and correspond with other child pornography collectors. This review revealed that the appellant emailed links to his account on the Russian image-sharing website to persons with whom he shared child pornography.

The government submitted documentary evidence, including: (1) forensic reports from analysis of the appellant's thumb drive and Toshiba laptop; (2) emails from the appellant's personal email account and the military email account he used to establish the personal account; and (3) several victim impact statements from identified child victims whose images the appellant possessed, though the military judge strictly limited his review to matters he deemed relevant to this case.[4]

### C. The appellant's case in extenuation and mitigation

The appellant's case in extenuation and mitigation included matters he first raised in the providence inquiry, upon which he expanded through the testimony of an expert witness and a treating psychiatrist, and his unsworn statement. To demonstrate his military character, the appellant presented the testimony of a Marine Corps colonel who had known the appellant and his family since they worked closely together decades prior. The colonel testified he knew appellant as "a man with exceptional character."[5] The appellant also presented extensive service record documents detailing his 29 years in the Marine Corps, which included several overseas deployments, and a retired pay calculation explaining the potential cost of a dismissal. To discount his future threat to society, the appellant presented the expert testimony of a forensic psychologist who interviewed and evaluated the appellant for over

---

[3] The suspected child pornography files on the Toshiba laptop were "thumb database files," which are created when the operating system is used to visually preview the contents of a folder, yielding small thumbnail icons.

[4] *See* Record at 58-66 (limiting consideration to only those portions of the victims' statements where the victims expressed the continuing impact they experienced in having others view images of their sexual exploitation and not considering any statements that dealt solely with the trauma caused by their specific abuser).

[5] *Id.* at 89-90.

five hours and who reviewed many documents relating to the appellant's of-fenses. The expert testified that the appellant described his prior sexual abuse to her in detail, including abuse he suffered at the hands of a teacher as a child and an anal rape perpetrated upon him by a senior enlisted Marine while the appellant was assigned to his first duty station. The expert testified the appellant's childhood sexual abuse led to his "arrested development" in sexual maturation and fixation on same-age females of his youth.[6] The expert further opined that his later abuse by the senior enlisted Marine caused the appellant to develop post-traumatic stress disorder (PTSD).[7] She described the various evaluative questionnaires and tests she conducted with the appel-lant that led her to the following expert opinion: that "after a reasonable pe-riod of incarceration and sex offender treatment with—after he's released with additional treatment, [the appellant] can fully integrate into society and be a productive member."[8]

The appellant also presented the testimony of an active duty clinical psy-chiatrist specializing in PTSD, who treated the appellant as a patient while he was in pre-trial confinement. The doctor concurred with the defense expert forensic psychologist's opinion about the appellant's rehabilitative potential, based on her observation of the appellant's open and receptive attitude to-ward treatment.

The appellant played in its entirety, a 20-minute DVD recording of a statement and presentation by his wife. Finally, the appellant delivered an unsworn statement in which he detailed his childhood and adult sexual abuse. He described meeting his wife, having children, and attempting to normalize his life.

## D. Sentence appropriateness

Although the crimes for which the appellant pleaded guilty carried a max-imum punishment of 30 years and 6 months, the appellant avers that the military judge's sentence to 7 years' confinement was inappropriately severe, because it did not account for the appellant's 29 years of military service and lack of prior criminal convictions. Conducting our *de novo* review, we find the sentence was appropriate for this offender and his offenses. The appellant's child pornography collection was expansive. He carried it with him on a thumb drive. He took efforts to conceal his illicit collection by making the folder containing the images a hidden folder, while leaving in view non-illicit,

---

[6] *Id.* at 102.

[7] This alleged abuser died years before while awaiting trial on unrelated charges.

[8] *Id.* at 108.

older files containing professional documents and family photos of his wife and daughters.

His child pornography collection ran the gamut. Images included depictions of sexual acts between multiple children and adults, a prepubescent child being sodomized with a sex toy, and small children fellating adult males or being penetrated by adult males. The "last accessed" dates revealed the appellant viewed the images often, and very recently before his apprehension by NCIS agents. The appellant not only collected these images, but he distributed them to others, further propagating the illicit images and actively promoting interest in criminal behavior whilst hoping to receive additional images in return. Rather than passively sharing the images, such as through a file-sharing service, he engaged in one-on-one conversations with like-minded individuals and sent the images via personal email. He further promoted his deviant conduct by conversing with MM, conspiring about what type of sexual acts they would both like to perform on a young girl if they had the chance.

Weighing against the severity of the appellant's offenses are his personal history of sexual abuse and his service record. We view the appellant's 29-year record of service as both aggravating and mitigating. His awards and fitness reports demonstrate years of faithful service. But by his own admission in his unsworn statement and through the testimony of the defense expert, the appellant viewed child pornography on and off over a period of many years and through a number of his overseas assignments. Although the military judge did not sentence the appellant for uncharged offenses, the judge could properly consider this evidence as it related to the appellant's rehabilitative potential and the credibility of the expert forensic psychologist's assessment. In conducting our *de novo* review, we likewise consider this evidence.

Similarly, the appellant's allegations that he had been a victim of sexual abuse is both aggravating and mitigating. The expert forensic psychologist testified about the effects of the abuse, arresting his development and contributing to PTSD. But the abuse also gave the appellant first-hand knowledge of the continuing impact of child pornography on victims of sexual abuse. Additionally, the appellant predominantly collected images of prepubescent *females* being abused by men—not pubescent males being abused by men, or an adult male being abused by a man.

This was not an act of one-time curiosity or a casual mistake made by a junior Marine. Rather, the appellant committed similar actions over a course of years that, while not necessarily continuous, only expanded with the availability of online sites, and lasted well into adulthood and while he occupied senior leadership roles. After reviewing the entirety of the record, we find

that justice has been done and that the appellant received the punishment he deserved for his offenses. *See Healy*, 26 M.J. at 395. Granting relief at this point would be to engage in clemency, a prerogative reserved for the convening authority, and we decline to do so. *See id.* at 395-96.

## III. CONCLUSION

The findings and sentence as approved by the CA are affirmed.

Senior Judge HUTCHISON and Judge TANG concur.

FOR THE COURT

RODGER A. DREW, JR.
Clerk of Court