*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Michael T. LAMORE**
Seaman Recruit (E-1), U.S. Navy
*Appellant*

**No. 201900315**

Decided: 20 April 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan J. Stormer

Sentence adjudged 19 June 2019 by a general court-martial convened at Naval Station Great Lakes, Illinois, consisting of a military judge alone. Sentence approved by the convening authority: confinement for five years and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Gregory Hargis, JAGC, USN*
*Lieutenant Megan E. Horst, JAGC, USN*

_____

[1] The convening authority suspended confinement in excess of three years pursuant to a pretrial agreement.

For Appellee:
*Lieutenant Kevin G. Edwards, JAGC, USN*
*Major Clayton L. Wiggins, USMC*

————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————

PER CURIAM:

Appellant was found guilty, in accordance with his plea, of sexual assault in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920.

Appellant asserts two assignments of error [AOEs]: (1) that sentence relief should be granted in light of the conditions of Appellant's post-trial custody; and (2) that there was a substantial omission in the record of trial that created a presumption of prejudice that the Government did not rebut. We find no prejudicial error and affirm.

## I. BACKGROUND

Pursuant to a pretrial agreement, Appellant pleaded guilty and was convicted of one specification of sexually assaulting the victim, Ms. Sierra.[2] The charge stems from Ms. Sierra's report to the Antioch, Illinois, police in July 2018 that several months before Appellant had met her at a park in Antioch, forced her into a portable toilet, and sexually assaulted her. After an investigation, Antioch authorities declined to prosecute. The Naval Criminal Investigative Service then assumed investigative jurisdiction, and Appellant was placed in pretrial confinement.

During his pretrial confinement at two civilian jails, Appellant was comingled with post-trial inmates. As part of the pretrial agreement, the convening authority agreed Appellant would receive an additional 15 days' confinement credit, and Appellant agreed not to raise a motion for confine-

_____

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

ment credit for violation of Rule for Courts-Martial [RCM] 305 and Articles 12 and 13, UCMJ, and to withdraw the motion he had previously filed with the trial court.

After his conviction and sentencing, Appellant was returned to a civilian correctional facility, where he was placed in a "protective custody" status. The conditions of this status included housing Appellant in a single-occupancy cell in a general population pod, not allowing him to comingle with other prisoners, and allowing him one hour outside the cell each day when he could use a phone, have video visitation, access entertainment and the commissary, and use the showers. This status lasted for 13 days until Appellant, after speaking with his defense counsel, complained about the situation, and the facility was notified that placing Appellant in protective custody was not in accordance with Navy policy and the contract between the Navy and the correctional facility. Appellant was transferred to the prison's general population that same day.

Thereafter, Appellant filed a post-trial motion for additional confinement credit on grounds of illegal post-trial punishment, arguing that the protective custody was "inappropriately severe." The Government responded to the motion and included an affidavit from the correctional facility outlining the conditions of the protective custody.

The military judge ruled on Appellant's motion without a post-trial Article 39(a), UCMJ, session. In his written ruling the military judge made findings of fact consistent with the conditions listed in the affidavit from the correctional facility. He concluded that while Appellant's protective custody did not rise to the level of an Eighth Amendment or Article 55, UCMJ, violation, "[n]o legitimate government purpose or objective was served by placing [Appellant] in [protective custody] post-trial."[3] He nevertheless denied the motion, concluding he did not have the authority to award confinement credit for such post-trial confinement issues.

The military judge's written ruling was made part of the authenticated record of trial; however, the post-trial filings by Appellant and the Government on the issue were not attached to the record and thus were omitted from the post-trial review process. After the convening authority's action,[4]

---

[3] App. Ex. XLIII at 6.

[4] The convening authority did not act until 149 days after Appellant's sentencing due, in large part, to the delay between the submission of the post-trial motion and the military judge's ruling.

and once the case was docketed for appellate review by this Court, we granted the Government's motion to attach the post-trial filings by Appellant and the Government to the record.

## II. DISCUSSION

### A. Post-Trial Custody and Sentence Relief

Appellant asserts that sentence relief should be granted in light of the conditions of his post-trial custody. We review sentence appropriateness de novo.[5]

A court of criminal appeals [CCA] "may affirm only . . . such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."[6] This statutory grant of authority gives us significant discretion in reviewing the appropriateness of an approved sentence to ensure "that justice is done and that the accused gets the punishment he deserves."[7] As "[c]onfinement conditions may very well alter an accused's punishment into something *worse* than he deserves,"[8] we may "consider post-trial confinement conditions . . . even where the allegations do not rise to the level of an Eighth Amendment or Article 55, UCMJ, violation."[9] However, our superior court has found that CCAs may not grant clemency,[10] and do not have "unlimited authority . . . to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove," but rather, the exercise of discretion in this area must be based on a "legal error or deficiency."[11]

#### 1. Legal error or deficiency

In *Gay II*, our superior court affirmed the CCA's reliance on Article 66(c), UCMJ, to find a sentence inappropriate where the appellant was placed in

---

[5] *See United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005).

[6] UCMJ, Article 66(c), 10 U.S.C. § 866(c).

[7] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[8] *United States v. Jacinto*, 79 M.J. 870, 891 (N-M. Ct. Crim. App. 2020).

[9] *United States v. Gay* [*Gay I*], 74 M.J. 736, 743 (A.F. Ct. Crim. App. 2015), *aff'd*, *United States v. Gay* [*Gay II*], 75 M.J. 264 (C.A.A.F. 2016).

[10] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[11] *Gay II*, 75 M.J. at 268-69.

solitary confinement through no fault of his own.[12] The CCA supported its determination by acknowledging:

> (1) there was no valid reason for placing [the appellant] in solitary confinement; (2) avoiding additional Article 12 violations was not an acceptable reason to place him in solitary confinement; (3) the assertion that an Air Force official directed that [the appellant] be placed in solitary was unrebutted; and, (4) [the appellant] was easily transferred to a pod that did not house foreign nationals once his unit complained of his treatment.[13]

The court found that "[t]hese reasons evidence[d] a legal deficiency in the post-trial conditions to which [the appellant] was subjected."[14]

Similar to the facts in *Gay II*, Appellant's post-trial confinement conditions evidence a legal error or deficiency. The record shows that (1) Appellant was placed in protective custody at the civilian facility due to no fault of his own; (2) placing Appellant in post-trial protective custody was both unnecessary and resulted in him being treated differently than civilian prisoners;[15] and (3) Appellant was easily transferred to the general population once he complained. Under these circumstances, we agree with the military judge's conclusion that "[n]o legitimate government purpose or objective was served by placing [Appellant] in [protective custody] post-trial."[16]

### 2. Exhaustion of administrative remedies

Generally, "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement

---

[12] *Gay II*, 75 M.J. at 268.

[13] *Id.* (citations omitted).

[14] *Id.*

[15] *See* UCMJ art. 58, 10 U.S.C. § 858 (2019) (establishing that "[p]ersons . . . confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated."); *Gay II*, 75 M.J. at 269 n.6 (finding the CCA could have found legal error on that basis).

[16] App. Ex. XLIII at 6.

conditions."[17] "Absent some unusual or egregious circumstance this means that the prisoner has exhausted the prisoner grievance system in his detention facility and that he has petitioned for relief under Article 138, UCMJ."[18] In this case, while the record does not indicate that Appellant used the correctional facility's formal grievance system or Article 138, UCMJ, he did call attention to the issue of his protective custody status, which the correctional facility then acknowledged and corrected. At that point there is no evidence the grievance process or Article 138 would have provided Appellant any further meaningful relief and because the facility's corrective action left nothing remaining to "exhaust." Instead, Appellant elected to avail himself of the trial court's continuing, pre-authentication jurisdiction and seek redress through a post-trial motion, which thoroughly developed the record to allow this Court to review the issue.[19] Thus, unlike in *United States v. Wise*,[20] *United States v. Wagers*,[21] and *United States v. Jacinto*,[22] the issue of Appellant's post-trial confinement conditions was litigated before the trial court, and the military judge made specific findings of fact and conclusions that allow this Court to review whether the conditions of Appellant's post-trial confinement resulted in the sentence being inappropriately severe. Accordingly, because the issue of his post-trial confinement was litigated and the record adequately developed, this Court will review sentence appropriateness in light of the conditions of his post-trial custody.

### 3. Sentence relief

We find that Appellant's post-trial confinement conditions were not so egregious as to merit relief. In *Gay II*, cited by Appellant, the Court determined that sentencing relief was appropriate, in part, because solitary confinement was ordered by Air Force officials in an effort to avoid an Article

---

[17] *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citing *United States v. White*, 4 M.J. 469, 472 (C.A.A.F. 2001)); *see also Jacinto*, 79 M.J. at 891.

[18] *Wise*, 64 M.J. at 469.

[19] In fact, the record in this case contains arguably much more information that it would have if Appellant had simply attached a "grievance chit" and a summary of the remedy to the record.

[20] 64 M.J. 468 (C.A.A.F. 2007).

[21] No. 201600180, 2017 CCA LEXIS 112, at *14 (N-M. Ct. Crim. App. Feb. 23, 2017) (unpublished).

[22] 79 M.J. 870, 890 (N-M. Ct. Crim. App. 2020).

12, UCMJ, violation.[23] In this case Appellant was placed in protective custody due to the civilian prison officials' misunderstanding of the facility's contract with the Navy, not due to an intentional order from the military. Appellant's confinement conditions were also significantly less restrictive than those of the appellant in *Gay II*, where the appellant's conditions included being stripped and searched, placed in shackles, and denied phone calls and visitation. None of those conditions is present in this case. While during this 13-day period Appellant could not comingle with other inmates and received less time outside of his cell, he was provided a day room outside of his cell with windows; use of a phone whenever outside his cell; video visits with family and friends when outside his cell; no restraints; access to entertainment; a regular meal schedule with food similar to other inmates'; and access to a single-use shower. We find these conditions, while not identical to those in general population, do not rise to the conditions the court in *Gay II* found warranted relief. Here, we conclude sentencing relief is not warranted and would amount to an inappropriate grant of clemency.

## B. Substantial Omission and Prejudice

Appellant asserts the record of trial is incomplete, as the military judge failed to attach the Defense post-trial motion, the Government response, and the evidence attached to both. Whether a record of trial is incomplete is a question of law which we review de novo.[24]

Article 54, UCMJ, requires a "complete record of proceedings" in any case resulting in a discharge.[25] "The requirement that a record of trial be complete and substantially verbatim in order to uphold the validity of a verbatim record sentence is one of jurisdictional proportion that cannot be waived."[26] Whether an omission is substantial can be a question of quality as well as quantity.[27] Substantial omissions render a record of trial incomplete, raising

---

[23] *Gay II*, 75 M.J. at 269.

[24] *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014).

[25] 10 U.S.C. § 854.

[26] *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000); *see also* RCM 1112(b)(1) (2019).

[27] *See United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982).

a presumption of prejudice.[28] Insubstantial omissions do not raise a presumption of prejudice or affect the record's characterization as a complete one.[29]

We have previously discussed that there are "two primary points in the post-trial process during which prejudice could result from a record of trial that has substantial omissions: (1) the [convening authority's] action, and (2) appellate review."[30] Because the missing items were attached to the record during appellate review, we focus solely on the omission at the convening authority's action stage of the post-trial process. Appellant argues the missing motions were substantial omissions because the military judge relied on them to resolve Appellant's post-trial motion. He further argues the Government cannot rebut the presumption of prejudice raised by the omissions because the uninformed nature of the SJA's recommendation denied Appellant "his or her full opportunity for corrective action or clemency from the CA."[31] We disagree.

The missing portions of the record were not "substantial" within the meaning of Article 54, UCMJ. Prior to the SJA's recommendation to the convening authority, the record contained the military judge's written ruling on Appellant's motion. This written ruling contained findings of fact and conclusions of law that thoroughly addressed Appellant's post-trial custody status. While the record was missing Appellant's motion and the Government's response, these portions were not of such quality and quantity to rise to the level of a substantial omission. The written ruling of the military judge was the crucial piece of the record that the SJA and the convening authority had access to prior to taking action.

Even assuming arguendo the omission was substantial, the Government has rebutted the presumption of prejudice. Appellant argues that the SJA's recommendation to the convening authority was uninformed because she did not have the motions relied upon by the military judge and her recommendation simply "glossed over" the judge's ruling. We find that argument without merit. The record contained, and thus the SJA had access to, the military judge's ruling at the time of her recommendation, and the convening authority was able to exercise his duties consistent with RCM 1109(d). We will not

---

[28] *Id*. at 8.

[29] *Henry*, 53 M.J. at 111.

[30] *United States v. Underhill*, No. 200700144, 2007 CCA LEXIS 306, at *8-9 (N-M. Ct. Crim. App. Aug. 9, 2007) (unpublished).

[31] *Id*.

second guess the actions of either the SJA or the convening authority under that rule as long as the record shows (1) the convening authority consulted with the staff judge advocate or legal advisor,[32] and (2) the convening authority considered matters timely submitted under RCM 1106 and 1106A before taking or declining to take action.[33] The record reflects that both were done in this case.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[34]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[32] RCM 1109(d)(2).

[33] RCM 1109(d)(3)(A).

[34] UCMJ arts. 59, 66.