# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40036

————————————

### UNITED STATES
*Appellee*

**v.**

### Donovan K. ASHMORE
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 March 2022

————————————

*Military Judge:* Elizabeth M. Hernandez.

*Sentence:* Sentence adjudged 29 October 2020 by GCM convened at Andersen Air Force Base, Guam. Sentence entered by military judge on 5 January 2021: Dishonorable discharge, confinement for 13 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Major Christopher C. Newton, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Captain Cortland T. Bobczynski, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification each of indecent recording and distribution of an indecent visual recording in violation of Article 120c; and 20 specifications of wrongful communication of a threat along with one specification each of wrongful possession of child pornography, wrongful distribution of child pornography, and wrongful production of child pornography, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920c, 934.[1,2] The military judge sentenced Appellant to a dishonorable discharge, 18 years of confinement, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority signed a Decision on Action memorandum reducing Appellant's term of confinement to the maximum authorized pursuant to the terms of the PTA—13 years—and approved all other portions of the sentence.[3]

On appeal, Appellant raises two issues: (1) whether Appellant's sentence is inappropriately severe; and (2) whether Appellant is entitled to sentence relief under this court's plenary power after Appellant's unit denied him leave for a year and a half after the Government began investigating him.[4] With respect to issue (2), we have carefully considered Appellant's contention and find it does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).[5] With respect to the remaining issue, we find no error materially prejudicial to a substantial right of Appellant and affirm the findings and sentence.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] All of the specifications were charged as occurring on divers occasions with the exception of one Article 120c, UCMJ, 10 U.S.C. § 920c, offense and ten of the Article 134, UCMJ, 10 U.S.C. § 934, offenses.

[3] In accordance with the PTA and upon acceptance of Appellant's guilty plea, the convening authority withdrew and dismissed with prejudice ten specifications of indecent recording and four specifications of wrongful communication of a threat in violation of Articles 120c and 134, UCMJ.

[4] Both issues were personally raised by Appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

[5] We conclude Appellant waived this issue for the same reasons as set out in *United States v. Scher*, No. ACM S32329, 2016 CCA LEXIS 657, at *9 (A.F. Ct. Crim. App. 3 Nov. 2016) (unpub. op.).

## I. BACKGROUND

Appellant joined the United States Air Force on 13 September 2016. Following his initial training, he reported to Andersen Air Force Base on Guam, and was assigned to a combat communications squadron. At the time of his court-martial, Appellant was 23 years old. From 13 September 2016 until 22 June 2018, Appellant operated a multi-layered scheme to acquire sexually explicit images and videos from young women, many of whom were minors. Appellant created numerous fictional, female personas on multiple social media platforms and accounts to "catfish"[6] additional women and young girls. Appellant acquired nude and sexually explicit images and videos from the females he "catfished" through these fictional personas. He did so by exchanging sexually explicit images and videos through his various fake personas in exchange for their sexually explicit photos and videos. If the females refused to provide sexual material, Appellant gathered information from their social media accounts and threatened them. However, if they did provide sexual material, he then used it as leverage for acquiring additional sexually explicit images and videos. He did so by threatening to send the compromising material to their friends, family, loved ones, employers, educational institutions, and/or the general public. In some cases, Appellant provided detailed instructions and deadlines directing his victims to produce sexually explicit videos. For example, he demanded that one victim make a video of her touching herself, masturbating, and bending over. Eleven of the victims listed in the charged offenses provided pornographic images or videos of themselves to Appellant which amounted to child pornography due to the victims' ages. Appellant saved over 616 of these images and videos on various devices and online accounts.

Appellant often used the images and videos he acquired to create social media accounts impersonating the victims he "catfished." In all, Appellant created and used 16 different Instagram accounts, 21 Snapchat accounts, 10 KiK accounts, 5 Facebook accounts, 3 Tinder accounts, 3 iMessage accounts, and 15 different phone numbers.[7] Appellant authenticated these fake personas by populating the accounts with photos previously provided by his victims. Appellant also coerced some of his victims into providing login credentials for their already existing social media accounts. He then used those accounts to "catfish" additional women and minor girls.

---

[6] According to the stipulation of fact, dated 20 October 2020, "catfishing" is a deceptive activity in which a person creates a fictional online persona to engage in communication with another individual.

[7] Instagram, Snapchat, KiK, Facebook, Tinder, and iMessage are all social media applications.

## II. DISCUSSION

Appellant contends that his sentence is inappropriately severe in light of the evidence he presented during sentencing. In particular, he asks that we consider the fact that he appreciated the severity of his conduct, took responsibility for his actions, and "provided at least one witness to testify to his rehabilitative potential." We disagree with Appellant's contention and find that no relief is warranted.

### A. Additional Background

During sentencing, the military judge considered Appellant's convicted misconduct and testimony from nine of Appellant's victims. Three victims testified that they attempted suicide as a direct result of Appellant's criminal behavior. In particular, one victim testified that she attempted to hang herself, but a friend cut the rope before she died. Three other victims stated they considered suicide, one of whom used a razor blade to cut herself. Of all the victims who attempted or contemplated suicide, four stated that they told Appellant of their intentions, but he continued to threaten them and demand sexually explicit material. Three stated Appellant responded with "I don't care" when they told him of their suicidal intentions.

The military judge also was presented with evidence concerning the nature of the threats made by Appellant and the effect those threats had on his victims. Not only did Appellant threaten to expose illicit photos and videos to most of his victims' families, but he also made individualized threats to each victim. For example, Appellant told one victim that he would see to it that her son was taken away if she did not provide sexually explicit photos. Another victim explained Appellant threatened to have her unborn child taken from her while she was pregnant. This victim said Appellant's behavior caused her to have a stress-induced heart attack while she was still pregnant. A third victim, who was 17 years old at the time, provided that Appellant told her that he would get her kicked out of school and ruin her chances to go to nursing school if she did not provide sexually explicit photos. A fourth victim said that Appellant threatened to send someone to her house to sexually assault her. This victim described how she lived in fear that someone would come to her house to rape and abuse her. Appellant threatened a fifth victim that if she didn't provide sexually explicit materials, he would release other sexually explicit photos of her to her commander.

During presentencing, Appellant made an unsworn statement where he described his difficult childhood and that he was sexually abused as a child. Appellant also took responsibility for his criminal conduct, expressed remorse for his crimes, and provided apologies to each of the victims who provided information to the court-martial. Appellant also presented one character witness

who testified that he considered Appellant to have good rehabilitative potential, even with full knowledge of Appellant's crimes.

**B. Law**

"We review sentence appropriateness de novo." *United States v. Datavs*, 70 M.J. 595, 604 (A.F. Ct. Crim. App. 2011) (citing *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005)), *aff'd*, 71 M.J. 420 (C.A.A.F. 2012). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

**C. Analysis**

Here, Appellant expressly agreed in the PTA that "the approved sentence will not exceed any period of confinement in excess of 13 years." We find Appellant made an informed decision, with the advice of counsel, to enter into what turned out to be an extremely favorable PTA, which expressly acknowledged that he could be adjudged any sentence as long as the approved term of confinement did not exceed 13 years. We also find the agreed-upon terms of the PTA are common and do not violate public policy, and Appellant has made no argument nor presented any evidence to the contrary. These facts alone weigh heavily in favor of sentence appropriateness.

We also note that Appellant cited no legal precedent or authority to support his contention that his sentence is inappropriately severe. Appellant's argument and analysis on appeal is similar to his unsworn statement and matters he provided during sentencing and clemency. "While these matters are appropriate considerations during clemency, they do not show [Appellant]'s sentence is inappropriately severe." *United States v. Aguilar*, 70 M.J. 563, 567 (A.F. Ct. Crim. App. 30 Mar. 2011). We find Appellant's recitation of these prior arguments amounts to another attempt at clemency, which is not an authorized function of this court. *See Nerad*, 69 M.J. at 146.

Regardless, we have also conducted a thorough review of Appellant's entire court-martial record, including his unsworn statement, enlisted performance report, the defense sentencing witness, and the materials submitted by Appellant during clemency. We conclude that the nature and seriousness of the offenses clearly support the approved sentence. Here, Appellant intentionally sought out young females, many of whom were minors, and made numerous, repeated threats over a two-year period to extract sexually explicit photos and

videos. His criminal behavior showed a gross disregard towards the life-altering impact his actions had on his victims. As a direct impact of Appellant's crimes, three of his victims attempted suicide, three others contemplated suicide, and all who testified suffered long-term emotional trauma as a result of his actions. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, 10 U.S.C. § 866(d), we conclude that the sentence is not inappropriately severe and we affirm the sentence approved by the convening authority.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court